UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF JEREMIAH WRIGHT, et al., | No. 2:24-cv-2505 WBS AC |
| Plaintiff, | |
| v. | ORDER |
| COUNTY OF STANISLAUS, et al., | |
| Defendants. | |

This matter is before the court on plaintiff's motion to compel. ECF No. 19. This discovery motion was referred to the magistrate judge pursuant to Local Rule 302(c)(1). The parties submitted the required joint statement. ECF No. 21. The motion was taken under submission. ECF No. 22. For the reasons set forth below, the motion to compel is GRANTED.

I.   Allegations in the Complaint

This case was filed on September 16, 2024. ECF No. 1. The complaint alleges that Jeremiah Wright (Wright), whose estate and surviving family members have brought this action, died while in custody at the Stanislaus County Sheriff's Detention Center on May 27, 2024. Id. at 1-2. Wright was arrested on the evening of May 23, 2024, and booked into the detention center around 1:15 a.m.[1] the following day and placed in a sobering cell where he was subject to periodic checks and visits by medical staff. Id. at 5-6, 9-12. At some point while he was in

---

[1] Although the complaint states 1:15 p.m. (ECF No. 1 at 6), based on additional allegations in the complaint and the evidence at issue, this appears to be a typographical error.

1  custody, Wright obtained access to a fatal quantity of fentanyl, which he ingested, causing him to
2  become unconscious and unresponsive in his cell.  Id. at 13.  Wright was reported unresponsive
3  on May 27, 2024, around 12:43 a.m., and time of death was called at 1:20 a.m.  Id. at 14.
4  Plaintiffs have asserted various state and federal claims against defendants including deliberate
5  indifference, failure to summon medical care, negligence, and wrongful death.  Id. at 21-31.

   II.     Relevant Background

   On December 30, 2024, the estate served Stanislaus County with request for production, set one, which was comprised of eighty-one requests for production.  ECF No. 21-1 at 7-21.  At issue in this dispute is Request for Production No. 1, which sought "[a]ll DOCUMENTS relating to the COUNTY OF STANISLAUS's investigation of JEREMIAH WRIGHT's death—including: reports, correspondence, statements, memos, letters, emails, and video/audio recordings."  Id. at 9.  After receiving extensions of time, defendant served responses to the requests on April 17, 2025, including the following response to Request No. 1:

> Objection.  Defendant objects to this request on the basis that the terms "DOCUMENTS" and "investigation" are vague, overbroad, and unduly burdensome.  Defendant objects to this Request on the grounds that it seeks to invade the attorney-client and attorney work-product privileges.  Subject to and without waiving the foregoing objections:
>
> See documents produced: DEF 000001-000406.

Id. at 24, 60.  These documents included custody and death records; government claims documents; May 27, 2024 dispatch audio; CPRA documents; May 27, 2024 BWC recordings; photographs; and May 24 and 25, 2024 facility recordings.  ECF No. 21 at 6.

On April 23, 2025, plaintiffs' counsel sent defense counsel an email outlining their various concerns with the responses, including the following concerns regarding the response to Request No. 1: boilerplate objections, the characterization of the duty to supplement, failure to produce a privilege log, ambiguity as to the completeness of production, and apparent gaps in materials and underproduction, particularly with respect to recordings.  ECF No. 21 at 6; ECF No. 21-1 at 80-82.  Counsel for the parties conducted telephonic conferences on May 9 and 23, 2025, in which they discussed the issues raised by defendants, including the existence of additional

surveillance footage and documentation related to Wright's incarceration. ECF No. 21 at 6; ECF No. 21-1 at 75-77. They agreed that by June 6, 2025, defense counsel would provide a response whether additional documents regarding Wright's incarceration would be produced. ECF No. 21-1 at 75.

On June 3 and 6, 2025, counsel exchanged additional emails related to the alleged gaps in and underproduction of documents, the lack of a privilege log, and concerns over subsequently discovered videos. ECF No. 21 at 6-7; ECF No. 21-1 at 70-74. Defense counsel indicated that the County would produce videos in response to Request No. 1, amend the response, and provide a privilege log with the only things being withheld being attorney-client communications. ECF No. 21-1 at 72-73. Counsel also spoke by phone on June 6, 2025, during which time they discussed additional videos that had been discovered and which defense counsel was still attempting to access. ECF No. 21 at 7. Defense counsel agreed to provide an explanation of the videos' contents by June 20, 2025, and produce the videos and a privilege log by June 27, 2025. Id.; ECF No. 21-1 at 70.

On June 9, 2025, the estate served Stanislaus County with request for production, set two, that consisted of a single request. ECF No. 21-1 at 93-96. Request No. 82 sought "[a]ll recordings reflecting checks on/visits with JEREMIAH WRIGHT during his incarceration at the Stanislaus County Sheriff's Detention Center, from May 24, 2024, to May 27, 2024, including: custody checks/visits, safety checks/visits, non-routine checks/visits, medical checks/visits, and mental health checks/visits." Id. at 95.

On June 18, 2025, defense counsel sent an email advising that they had been able to get all but one of the new videos to play, that the videos they had viewed were duplicates, and that the files would be produced the following week along with an update regarding the last video. Id. at 68. On June 27, 2025, defense counsel sent an email advising that a partial production of documents had been sent (Bates Nos. DEF000407-001595). Id. at 67. The email went on to state that:

> due to the sheer volume of material (and despite having two paralegals working on this discovery), I can't produce amended/supplemental responses, additional documents, and a

3

>privilege log by today; I anticipate this can be completed by July 18, 2025.
>
>I grossly underestimated the amount of material that I would receive for the other in-custody death cases. We have approximately 7,000 pages of documents to review/redact (2,000 of which were received yesterday). In addition, there are over 200 videos (for the other in-custody cases) that vary in length, some of which are 9 hours long (hence my original objections that the requests are severely burdensome). The foregoing will impact any amended/supplemental responses and a privilege log. Again, I sincerely question the merits of a motion to compel given that fact discovery closes on June 1, 2026 (almost a year from now).

Id.

On July 9, 2025, the County served the following response to Request No. 82:

>Objection. Defendant objects to this request on the basis that the terms "recordings", "reflecting", and "non-routine checks/visits" are vague and overbroad. Defendant objects to this Request on the grounds that it seeks to invade the attorney-client and attorney work-product privileges. Subject to and without waiving the foregoing objections:
>
>See documents produced: DEF 000001-000181, DEF000204-000489, DEF 001596-001610.

Id. at 99. Of these documents, DEF 001596-001610 were previously unproduced and were custody records and facility recordings that related to Wright's safety cell placement on May 24, 2024. ECF No. 21 at 8.

On September 10, 2025, plaintiffs' counsel sent an email stating that they had yet to receive the materials that were previously promised, reiterating concerns about what appeared to be incomplete records of Wright's incarceration and the lack of explanation, and requesting to schedule a telephonic conference to discuss the issues. Id. at 8-9; ECF No. 21-1 at 66-67.

Plaintiff filed the instant motion to compel on September 24, 2025. ECF No. 19. The parties conducted a fourth telephonic conference the following day. ECF No. 21 at 9. During that call, defense counsel stated that she could not estimate when the County would provide amended responses and a privilege log of withheld documents, could not answer if there was outstanding discovery related to Wright's death because she had not gone through all the documents, and asserted the attorney-client privilege in response to a question about why additional documents were produced after it was represented that all documents and recordings

4

1  related to Wright's death had been produced. Id.; ECF No. 21-1 at 62.

2  On September 26, 2025, the County produced additional documents identified at Bates Nos. DEF001611-DEF2326.[2] ECF No. 21 at 10. Defense counsel also sent an email stating that plaintiffs have adequate time to complete discovery because fact discovery does not close until June 1, 2026, and that the records have not been produced by the estimated production dates due to their volume. ECF No. 21-2 at 23. Counsel states that four members of staff from her firm have assisted in reviewing, redacting, and preparing the records, requiring over 230 hours of work; the records were not ready for her review until the last week of August; and counsel had been occupied with work in other cases. Id. She further asserted that the deadlines at issue had been pushed by plaintiffs' counsel, were sooner than she had offered, and she was "woefully unprepared for how extensive this discovery would be" but had nevertheless agreed to provide amended responses, a privilege log, and records for other in-custody deaths. Id. Counsel advised that she could not give an estimate on additional production but was reviewing the records and producing them on a rolling basis, that production was taking considerable time because the requests were "burdensome and oppressive," and that she could not produce a privilege log until after all records had been reviewed. Id. at 23-24.

Rule 30(b)(6) depositions are currently scheduled for November 14, 2025, for persons most knowledgeable about the type, amount, and location of cameras at the detention center; the recordings of Wright during his incarceration; and the type, amount, and location of observations of Wright. ECF No. 21 at 5; ECF No. 21-2 at 5-6.

III.  Motion to Compel

A.  Overview of Dispute

The estate asserts that the County has made only boilerplate objections and should be required to remove those objections and amend their responses to indicate whether any responsive materials are being withheld. ECF No. 21 at 12. Plaintiff argues that (1) while defendant has

---

[2] Neither party expands upon the contents of the production or whether it is responsive to the requests at issue. The court therefore assumes it relates to other requests not at issue in the present motion.

agreed to produce outstanding discovery, that agreement does not permit defendant to produce documents whenever it wants, (2) the lack of response regarding the completeness of production has left plaintiff unable to determine what discovery remains outstanding, and (3) the failure to produce a privilege log constitutes a waiver of any privilege.  Id. at 12-13.  Plaintiff emphasizes that the instant motion to compel is limited to discovery specific to Wright's death, and argues that the County is attempting to distract from the issue by referencing the time and documentation related to other in-custody deaths which it has agreed to provide.  Id. at 2.  Finally, plaintiff asserts that it believes additional unproduced discovery remains outstanding based on the gaps in the documents produced and the as yet unexplained delayed production of additional documents and videos.  Id. at 18.  Plaintiff requests that the County be required to double-check for responsive information in its possession, custody, or control; produce any newly-found materials; and provide a verification that explains the steps taken to double-check and certifies all responsive documents have been provided.  Id.

The County argues that the motion to compel is unnecessary because it has repeatedly agreed to produce a privilege log and additional records and that a privilege log cannot be created until all documents have been reviewed.  Id. at 4-5, 13-14.  It takes the position that waiving privilege would punish it "for agreeing to take on the burdensome, oppressive, and expensive cost of gathering, reviewing, and redacting *all records* related to the deaths of other inmates who died in-custody in the Stanislaus County jail facilities that were overdose related."  Id. at 14 (emphasis added).  The County also objects to the request for a verification regarding steps taken to produce responsive documents and argues that it clearly already double-checked the information since it produced supplemental documents, and depositions under Rule 30(b)(6) have been scheduled that will render any such verification duplicative.  Id. at 5, 19.

### B. Applicable Legal Standards

The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the

>parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The court, however, must limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" or if the party who seeks discovery "has had ample opportunity to obtain the information by discovery;" or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). The purpose of discovery is to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (citation omitted), and "to narrow and clarify the basic issues between the parties," Hickman v. Taylor, 329 U.S. 495, 501 (1947).

Under Federal Rule of Civil Procedure 37, a motion to compel may be made if "a party fails to produce documents or fails to respond that inspection will be permitted . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The party seeking to compel discovery has the burden of showing that the discovery sought is relevant or that its denial will cause substantial prejudice. Aros v. Fansler, 548 F. App'x 500, 501 (9th Cir. 2013) (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)). The opposing party is "required to carry a heavy burden of showing why discovery was denied." Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

General or boilerplate objections, without explanation, are not prohibited but are insufficient as a sole basis for an objection or privilege claim. Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005). Privilege logs are due at the time a discovery response is made, see Fed. R. Civ. P. 26(b)(5) (requiring privilege log for withheld documents); Fed. R. Civ. P. 34(b)(2)(A) (objections are due within 30 days), and improper assertions of privilege in the privilege log, or an untimely privilege log, may (but do not necessarily) result in waiver, Burlington, 408 F.3d at 1149 ("[W]e also reject a *per se* waiver rule

////

that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit.").

### C. Discussion

#### i. Incomplete Responses

At this stage, the County's position that plaintiff's motion to compel is unnecessary because it has agreed to produce the materials at issue is untenable. Were the County making the same argument six months ago, after its initial response to the requests, the argument would have some merit. But it has now been ten months since plaintiff first propounded its discovery requests,[3] and it does not appear that the County has provided any clear response regarding whether all responsive documents have been provided, what documents may still be outstanding, and what documents are being withheld on grounds of privilege. As plaintiff rightly argues, agreement to produce documents is meaningless if no clear timeline for production is set and the documents are never actually produced. That fact discovery does not close until June 1, 2026, does not absolve defendant of its obligation to serve timely responses.

Defense counsel repeatedly asserts that the requests, including those not at issue in the instant motion, are burdensome and have resulted in approximately 230 gigabytes of data. It is appropriate to consider the requests at issue in the context of the scope of production as a whole rather than in isolation as plaintiff urges. However, defendant offers little to support its claim that the requested production has imposed such an overwhelming burden that continued delays in production are justified or that the burden is disproportionate to the needs of the case. While 230 gigabytes of data sounds impressive, it is an essentially meaningless quantifier of the actual volume of the materials at issue when the data size of a file can vary immensely depending not only on what type of file is at issue (e.g., text document, photograph, video, etc.) but also upon various other factors unique to each file (e.g., length, format, resolution, frame rate, compression, etc.).

---

[3] Although plaintiff's second request for production, consisting of Request No. 82, was not served until June 9, 2025, the court finds that the documents it seeks fall within the scope of documents already requested in the original request for production. See Request Nos. 17-19, 23-25 (ECF No. 21-1 at 11-13).

Despite defendant's failure to further quantify the responsive documents in the parties' joint statement, as noted above, a June 27, 2025 email from defense counsel stated that she had received "approximately 7,000 pages of documents to review/redact" and "over 200 videos (for the other in-custody cases) that vary in length, some of which are 9 hours long." ECF No. 21-1 at 67. Assuming these documents and videos make up the 230 gigabytes of data, defendant still fails to establish sufficient burden to sustain an objection to the discovery requests. While the documentation referenced is substantial, it is not so voluminous that the volume alone constitutes undue burden or explains why production, including a privilege log, is still not complete over ten months after discovery was initially propounded. Because defendant has failed to sufficiently substantiate its objection based on undue burden, the objection is overruled as to both Request No. 1 and Request No. 82.

          ii.     <u>Waiver of Privilege</u>

Plaintiff also argues that defendant has waived it objection on the grounds of attorney-client privilege because the County has yet to produce a privilege log. Defendant does not dispute that it has not produced a log and instead argues that it cannot do so until all remaining documents have been produced. When considering whether privilege has been waived, the court must consider the following factors: (1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged;" (2) "the timeliness of the objection and accompanying information about the withheld documents;" (3) "the magnitude of the document production;" and (4) other circumstances that make responding to discovery unusually easy or unusually hard. <u>Burlington</u>, 408 F.3d at 1149. "These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process." <u>Id.</u>

The first factor weighs in favor of waiver. Defendant has made only a general assertion of privilege and has yet to produce any privilege log, leaving both plaintiff and the court without any understanding of what documentation has been withheld on the grounds of privilege and therefore unable to assess whether the documents are in fact privileged. The second factor also weighs in

favor of waiver. Although defendant timely made its objection, it has thus far failed to provide any information about the withheld documents. It is unclear whether the third factor weighs for or against waiver. While defendant asserts that the magnitude of production is burdensome and oppressive, as noted above, the volume of documents at issue is not so great that it renders the discovery overly burdensome in and of itself. Moreover, it is unclear why defendant was not able to produce a privilege log on a rolling basis, as it has been doing with responsive documents. Because there is no privilege log, the court is also unable to assess the magnitude of documents withheld in comparison to those that have been produced. The final factor is neutral, as defendant has not identified any factor, other than the volume of documents, that would make responding to discovery unusually easy or difficult.

The court is reluctant to order the production of documents falling within the scope of the attorney-client privilege when the magnitude and nature of the allegedly privileged materials at issue is currently unknown. The court will therefore not declare a waiver of privilege at this point. Instead, defendant will be required to either produce the documents or a privilege log. If defendant fails to produce a privilege log or such log is inadequate to assess whether the withheld documents are privileged, any assertions of privilege will be overruled.

        iii.    Conclusion

To the extent gaps in production may be due to responsive documents being non-existent, this court clearly cannot compel defendant to produce materials that do not exist. However, as addressed above, it is not clear that all materials responsive to Requests for Production Nos. 1 and 82 have been produced and defendant has yet to produce a privilege log. Given the apparent gaps in production and lack of a clear response regarding whether additional documents or videos exist, defendant shall be required to conduct another search for responsive materials if it has not done so already. Defendant shall also be required to provide amended responses to Requests for Production Nos. 1 and 82. These responses shall include any responsive documents that have not already been produced and a certification that states that a second search was conducted for responsive documents, affirms that all responsive documents have been produced, and outlines the steps taken to complete both the initial and second search. The amended responses may

incorporate specifically cited testimony from the Rule 30(b)(6) depositions where appropriate. The responses shall also be accompanied by a privilege log if any privileged materials have been withheld. Failure to produce a privilege log within the time set for doing so or production of an inadequate log will result in a waiver of any privilege.

Because the court has no clear understanding of the volume of responsive materials that have yet to be produced it is unable to determine a realistic timeline for compliance with this order. A hearing to discuss a schedule for production in accordance with this order will therefore be set. The hearing will be vacated in the event the parties submit a stipulated schedule for production.

IV.     Request for Sanctions

Federal Rule of Civil Procedure 26(g) requires that every discovery response be signed by at least one attorney of record and provides that such signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the response is consistent with the rules of procedure and is not made for an improper purpose. Fed. R. Civ. P. 26(g)(1)(B)(i). "If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). The court uses an objective standard to determine whether a party has violated the rule. Or. RSA No. 6, Inc. v. Castle Rock Cellular of Or. Ltd., 76 F.3d 1003, 1007 (9th Cir. 1996).

Plaintiff requests sanctions under Federal Rule of Civil Procedure 26(g)(3). ECF No. 21 at 14-15. In support of this request, plaintiff argues that it is clear the County and counsel did not conduct a reasonable inquiry because the initial responses were later confirmed to be incomplete and its inquiry into the late production have been met with assertions of attorney-client privilege. Id. The County opposes the request and argues that opposing counsel's questions go directly to the attorney-client privilege and that a privilege log is forthcoming once all records are reviewed. Id. at 16. It further asserts that sanctions should not issue when the delays in production are due to the burdensomeness of the requests. Id.

////

11

The current record does not demonstrate that either defense counsel or the County failed to conduct a reasonable inquiry at the time the initial responses were provided. The court agrees that the obvious gaps in the videos produced[4] and the subsequent production of additional documents with no explanation is concerning, and indicate the initial inquiry may not have been reasonable. However, absent information regarding the steps taken to identify responsive documents, the reason for gaps in production, and why the subsequently produced documents were not found in the initial search, the court cannot find that defendant's efforts were objectively unreasonable. The request for sanctions will therefore be denied. In light of the fact that defendant is being ordered to provide supplemental responses and the parties have scheduled Rule 30(b)(6) depositions related to this issue, which may result in evidence demonstrating the initial inquiry was unreasonable, the denial will be without prejudice.

V.   Request for Expenses

Plaintiff seeks an award of costs and fees in the event its motion is granted. ECF No. 21 at 19-20. Defendant opposes the motion, arguing that an award of expenses would be unjust. Id. at 20. Federal Rule of Civil Procedure 37 provides that if a motion to compel is granted, the court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the filing of the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court "must not" order payment if the moving party filed the motion before attempting in good faith to resolve the matter, if the nondisclosure, response, or objection was substantially justified, or if other circumstances make an award unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Here, plaintiff argues that it made good faith attempts to obtain the requested discovery without court intervention and defendant's failure to complete production is not substantially justified because of defendant's "boilerplate" objections and failure to complete production or

---

[4] The chart provided by plaintiff summarizing the video produced includes substantial gaps in the surveillance recordings, including no surveillance video for a period beginning over twenty-four hours prior to Wright being found unresponsive all the way through the post-incident response. See ECF No. 21 at 3.

produce a privilege log over ten months after the request was initially made. ECF No. 21 at 19-20. Plaintiff has provided an attorneys' fees calculation totaling $6,100.00 for the instant motion. ECF 21-1 at 3-5 (Plaintiff's Counsel Decl.). Defendant argues that expenses are inappropriate because any delay has been substantially justified and it has been working diligently to complete production, which has been burdensome and oppressive. ECF 21 at 20. Defendant contends that an award of expenses would punish it for agreeing to provide the requested documents despite the burden. Id.

The award of expenses and attorney's fees is appropriate in this case. The court finds that plaintiff made a good faith attempt to obtain discovery from defendant without the court's intervention and that defendant's conduct, specifically the excessive delay in completing production and continued failure to produce a privilege log, necessitated court intervention that should have been unnecessary. As set forth above, the court is granting plaintiff's motion to compel in full, and defendant has failed to provide any substantial justification for its failure to complete production or provide a privilege log.

Awarded fees must be "reasonable," and the court determines what constitutes reasonable attorneys' fees by applying the "lodestar" method. Ferland v. Conrad Credit Corp., 244 F.3d 1145, 1149 n.4 (9th Cir. 2001). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rate claimed." Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945-46 (9th Cir. 2007). Recovery should not exceed the expenses and fees that were reasonably necessary to resist the offending action. Id. at 1185. Under the "lodestar" approach for assessing reasonable attorney's fees, the number of hours reasonably expended is multiplied by a reasonable hourly rate. Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir. 2008). A reasonable hourly rate is determined by identifying the relevant legal community (the forum where the district court sites) and the prevailing market rate in that community for similar services by lawyers of reasonably comparable skill. Id. at 979-81.

To determine what numbers to use to arrive at a "reasonable" fee under the lodestar method, Local Rule 293 requires a party seeking an award of attorney's fees to submit an

affidavit addressing certain criteria that the court will consider. Mr. Merin has submitted billing records listing $5,200.00 in fees (13.0 hours of work billed at $400 per hour) for his associate who has been an attorney since June 2013 and worked in his office since April 2008. ECF No. 21-1 at 4-5. Counsel has listed $900.00 in fees (1.5 hours billed at $600 per hour) for himself. Id. at 3-5. To determine whether counsel has employed a "reasonable hourly rate" for purposes of calculating the lodestar amount, the court must look to the "prevailing market rates in the relevant community." Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013) (quoting Dang v. Cross, 422 F.3d 800, 813 (9th Cir. 2005)). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." Id. (quoting Prison Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010)). Within this geographic community, the district court should "tak[e] into consideration the experience, skill, and reputation of the attorney." Dang v. Cross, 422 F.3d 800, 813 (9th Cir. 2005) (citation and internal quotation marks omitted).

Mr. Merin's associate has been a practicing attorney for twelve years, and though Mr. Merin does not state how many years he has been in practice, he has been recognized by judges in this district as having "practiced as a civil rights attorney in the Sacramento area for decades and has been regarded by judges of this district as 'unique[]' in Sacramento and 'one of the most experienced and successful civil rights attorneys in the Sacramento area." I.H. v. California, No. 2:19-cv-2343 DAD AC, 2025 WL 1158975, at *5, 2025 U.S. Dist. LEXIS 75577, at *14 (E.D. Cal. Apr. 21, 2025) (alteration in original). A recent Eastern District case found that $650 per hour was a reasonable rate for an attorney with "over 26 years of experience in complex civil rights litigation and class actions" and a rate of $350 was appropriate for a staff attorney with 2-3 years of experience. Ayala v. Valley First Credit Union, No. 1:22-cv-0657 HBK, 2024 WL 1053820, at *10-11, 2024 U.S. Dist. LEXIS 42442, at *29-32 (E.D. Cal. Mar. 11, 2024) (collecting cases).

Plaintiff requests fees in the amount of $6,100.00. For the reasons set forth above, the undersigned finds the rate and hours billed reasonable and plaintiff will be awarded $6,100.00 ($5,200.00 + 900.00) in attorneys' fees

14

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to compel (ECF No. 19) is GRANTED as follows:

    a. Defendant Siskiyou County shall provide amended responses, including any applicable privilege log, to Request for Production No. 1 and Request for Production No. 82, as set forth above.

    b. The supplemental responses shall be signed by counsel of record certifying that a second search was conducted for responsive documents, that all responsive documents have been produced, and explaining the steps taken to complete the second search.

2. Plaintiffs' motion for expenses (ECF No. 19) is GRANTED and defendant is ordered to pay plaintiff $6,100.00 in attorneys' fees within ten days of this order.

3. Plaintiffs' motion for sanctions under Federal Rule of Civil Procedure 26(g)(3) (ECF No. 19) is DENIED without prejudice.

4. A scheduling conference to set a timeline for production is set for November 12, 2025, at 10:00 a.m. before Magistrate Judge Allison Claire in Courtroom 26. The parties shall submit a joint proposed schedule for compliance at least three days prior to the hearing. If the parties are unable to submit a single proposed schedule because they cannot agree, the proposal must reflect each party's proposed deadline(s). For any deadline(s) upon which the parties are unable to agree, each party must provide a brief explanation of their position on the appropriateness of their proposed deadline. In the event the parties submit a stipulated schedule for production, the hearing will be vacated.

DATED: October 29, 2025

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE