UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ESTATE OF JEREMIAH WRIGHT, et al.,

Plaintiff,

v.

COUNTY OF STANISLAUS, et al.,

Defendants.

No. 2:24-cv-2505 WBS AC

ORDER

This matter is before the court on multiple discovery motions and is referred to the magistrate judge pursuant to Local Rule 302(c)(1). The motions at issue and the associated briefing are as follows:

(1) plaintiff's motion to compel at ECF No. 38, Joint Statement at ECF No. 42;

(2) plaintiff's motion for sanctions re: unpreserved recordings at ECF No. 39, opposition filed at ECF No. 50, reply at ECF No. 59;

(3) plaintiff's motion for sanctions at ECF No. 67, Joint Statement at ECF No. 75;

(4) defendant's motion to compel interrogatory responses at ECF No. 95, Joint Statement at ECF No. 99; and

(5) plaintiff's motion to compel at ECF No. 105, Joint Statement at ECF No. 109.

Each motion was taken under submission. ECF No. 40, 68, 98, 106. Each motion is DENIED for the reasons set forth below. The parties will each bear their own fees and costs.

I. Procedural Posture

This case was filed on September 16, 2024. ECF No. 1. The initial complaint named as defendants the County of Stanislaus, the Stanislaus County Sherriff's Department, and three individual employees of the County and Sherriff's Department: Jeff Dirkse, Colton Dutey, and Victor Santoyo. ECF No. 1 at 3. Following some initial discovery, the parties stipulated to allow plaintiff to file a First Amended Complaint (ECF No. 35) to add several defendants; the First Amended Complaint was filed on January 13, 2026. ECF No. 37. After some litigation over the sufficiency of the First Amended Complaint, the parties stipulated to allow plaintiff to file a Second Amended Complaint (ECF No. 66) which was filed on March 31, 2026. ECF No. 74.

On May 1, 2026, several newly added defendants (California Forensic Medical Group, Inc., Wellpath, LLC, and Wellpath Management, Inc.) moved to dismiss the Second Amended Complaint, arguing in part that it was a "shotgun pleading" in violation of Federal Rule of Civil Procedure 8. ECF No. 89 at 2. On June 3, 2026, U.S. District Judge William B. Shubb agreed with defendants that the Second Amended Complaint was an improper shotgun pleading and dismissed it with leave to amend. ECF No. 96. Plaintiff's operative Third Amended Complaint (TAC) was filed on June 24, 2026. ECF No. 100. There is a motion to dismiss the TAC by defendants Stanislaus County, Stanislaus Sherrif's Department, and County employees ("County defendants") set to be heard by Judge Shubb on August 31, 2026. ECF No. 102. There is another motion to dismiss the TAC by non-County defendants set to be heard by Judge Shubb on September 14, 2026. ECF No. 107.

II. Abridged Allegations of the Third Amended Complaint

The operative complaint, the 84-page TAC, alleges that Jeremiah Wright (Wright), whose estate and surviving family members brought this action, died while in custody at the Stanislaus County Sheriff's Detention Center on May 27, 2024. ECF No. 100 at 2-3. Wright was arrested on the evening of May 23, 2024, and booked into the detention center around 1:15 a.m. the following day. He was placed in a sobering cell ("R107") where he was subject to periodic checks and visits by medical staff, during which plaintiffs allege multiple false reports of movement and responsiveness were recorded. Id. at 3-28. Wright was removed from the

sobering cell and placed in Single Holding Cell, R117, around 9:25 a.m. on May 24, 2024. Id. at 28. Around 11:18 a.m., Wright was moved to a communal holding cell, R126, which was occupied by Wright and four other inmates. Id. at 29. Around 3:00 p.m., Wright was moved to Cell B124, a single cell. Id. at 30.

The TAC alleges that defendants spoliated and/or failed to preserve jail surveillance from Cell B124 captured from May 24, 2024, at 3:11:03 p.m. to May 25, 2024, at 5:59:48 p.m. but alleges on information and belief that during this time, the pattern of false reporting on Wright's condition continued. Id. at 30. Wright never left Cell B124, and during the time he was held there, his medical needs based on symptoms of withdrawal and/or overdose were exhibited and his condition continued to deteriorate. Id. Around 12:47 a.m. on May 27, 2024, defendant Colton Dutey requested medical over the radio and reported that Wright was unresponsive. Id. at 36-37. Medical responded but Wright was unable to be revived and was declared dead at 1:20 a.m.; the cause of death was reported to be acute fentanyl toxicity. Id. at 37.

On June 17, 2024, plaintiff submitted a government claim to defendants County of Stanislaus, Stanislaus County Sheriff's Department, and Jeff Dirkse. Id. at 38. Plaintiffs demanded preservation of records including video and audio recordings. Id. During litigation of this federal action, County of Stanislaus withheld discovery and on December 19, 2025, the County falsely verified a discovery response stating that all jail surveillance recordings during Wright's stay in Cell B124 were unavailable. Id. at 39. On January 16, 2026, the County acknowledged the earlier response was false and some recordings were actually available. On January 21, 2026, the County produced the recordings it had falsely verified did not exist. Id.

June 26, 2024, defendants California Forensic Medical Group, Wellpath LLC, Wellpath Management, and Joe Caporgny conducted a mortality and morbidity report and review related to Wrights in-custody death. Id. at 39. The TAC alleges the review was a "sham" and contained multiple false statements. Id. at 39-40. On July 31, 2024, plaintiffs sent a California Public Records Act requests to the custodians of records at the County and Sherriff's Department. Id. at 40. The County and Sherriff's Department refused to produce any records; plaintiffs allege this refusal was without justification and in retaliation for plaintiffs' lawsuits. Id. at 41. Plaintiffs

also allege that defendants maintain several policies and customs that amount to violations of law. Id. at 43-53.

III. Relevant Discovery Background

On December 30, 2024, the estate served Stanislaus County with request for production, set one, which was comprised of eighty-one requests for production. ECF No. 21-1 at 7-21. Request for Production No. 1 sought "[a]ll DOCUMENTS relating to the COUNTY OF STANISLAUS's investigation of JEREMIAH WRIGHT's death—including: reports, correspondence, statements, memos, letters, emails, and video/audio recordings." Id. at 9. After receiving extensions of time, defendant served responses to the requests on April 17, 2025, including the following response to Request No. 1:

> Objection. Defendant objects to this request on the basis that the terms "DOCUMENTS" and "investigation" are vague, overbroad, and unduly burdensome. Defendant objects to this Request on the grounds that it seeks to invade the attorney-client and attorney work-product privileges. Subject to and without waiving the foregoing objections:
>
> See documents produced: DEF 000001-000406.

Id. at 24, 60. The documents produced included custody and death records; government claims documents; May 27, 2024 dispatch audio; CPRA documents; May 27, 2024 BWC recordings; photographs; and May 24 and 25, 2024 facility recordings. ECF No. 21 at 6.

On April 23, 2025, plaintiffs' counsel sent defense counsel an email outlining their various concerns with the responses, including the following concerns regarding the response to Request No. 1: boilerplate objections, the characterization of the duty to supplement, failure to produce a privilege log, ambiguity as to the completeness of production, and apparent gaps in materials and underproduction, particularly with respect to recordings. ECF No. 21 at 6; ECF No. 21-1 at 80-82. Counsel for the parties conducted telephonic conferences on May 9 and 23, 2025, in which they discussed issues including the existence of additional surveillance footage and documentation related to Wright's incarceration. ECF No. 21 at 6; ECF No. 21-1 at 75-77. They agreed that by June 6, 2025, defense counsel would provide a response whether additional documents regarding Wright's incarceration would be produced. ECF No. 21-1 at 75.

On June 3 and 6, 2025, counsel exchanged additional emails related to the alleged gaps in and underproduction of documents, the lack of a privilege log, and concerns over subsequently discovered videos. ECF No. 21 at 6-7; ECF No. 21-1 at 70-74. Defense counsel indicated that the County would produce videos in response to Request No. 1, amend the response, and provide a privilege log; only attorney-client communications would be withheld. ECF No. 21-1 at 72-73. Counsel also spoke by phone on June 6, 2025, during which time they discussed additional videos that had been discovered and which defense counsel was still attempting to access. ECF No. 21 at 7. Defense counsel agreed to provide an explanation of the videos' contents by June 20, 2025, and to produce the videos and a privilege log by June 27, 2025. Id.; ECF No. 21-1 at 70.

On June 9, 2025, the estate served Stanislaus County with request for production, set two, which consisted of a single request. ECF No. 21-1 at 93-96. Request No. 82 sought "[a]ll recordings reflecting checks on/visits with JEREMIAH WRIGHT during his incarceration at the Stanislaus County Sheriff's Detention Center, from May 24, 2024, to May 27, 2024, including: custody checks/visits, safety checks/visits, non-routine checks/visits, medical checks/visits, and mental health checks/visits." Id. at 95.

On June 18, 2025, defense counsel sent an email advising that they had been able to get all but one of the new videos to play, that the videos they had viewed were duplicates, and that the files would be produced the following week along with an update regarding the last video. Id. at 68. On June 27, 2025, defense counsel sent an email advising that a partial production of documents had been sent (Bates Nos. DEF000407-001595). Id. at 67. The email went on to state that:

> due to the sheer volume of material (and despite having two paralegals working on this discovery), I can't produce amended/supplemental responses, additional documents, and a privilege log by today; I anticipate this can be completed by July 18, 2025.
>
> I grossly underestimated the amount of material that I would receive for the other in-custody death cases. We have approximately 7,000 pages of documents to review/redact (2,000 of which were received yesterday). In addition, there are over 200 videos (for the other in-custody cases) that vary in length, some of which are 9 hours long (hence my original objections that the requests are severely burdensome). The foregoing will impact any amended/supplemental

> responses and a privilege log. Again, I sincerely question the merits of a motion to compel given that fact discovery closes on June 1, 2026 (almost a year from now).

Id.

On July 9, 2025, the County served the following response to Request No. 82:

> Objection. Defendant objects to this request on the basis that the terms "recordings", "reflecting", and "non-routine checks/visits" are vague and overbroad. Defendant objects to this Request on the grounds that it seeks to invade the attorney-client and attorney work-product privileges. Subject to and without waiving the foregoing objections:
>
> See documents produced: DEF 000001-000181, DEF000204-000489, DEF 001596-001610.

Id. at 99. Of these documents, DEF 001596-001610 were previously unproduced and were custody records and facility recordings that related to Wright's safety cell placement on May 24, 2024. ECF No. 21 at 8.

On September 10, 2025, plaintiffs' counsel sent an email stating that they had yet to receive the materials that were previously promised, reiterating concerns about what appeared to be incomplete records of Wright's incarceration and the lack of explanation, and requesting to schedule a telephonic conference to discuss the issues. Id. at 8-9; ECF No. 21-1 at 66-67.

Plaintiff filed a motion to compel on September 24, 2025, requesting fees and sanctions for the withheld discovery. ECF No. 19. The parties conducted a fourth telephonic conference the following day. ECF No. 21 at 9. During that call, defense counsel stated that she could not estimate when the County would provide amended responses and a privilege log of withheld documents, could not answer if there was outstanding discovery related to Wright's death because she had not gone through all the documents, and asserted the attorney-client privilege in response to a question about why additional documents were produced after it was represented that all documents and recordings related to Wright's death had been produced. Id.; ECF No. 21-1 at 62.

On September 26, 2025, the County produced additional documents identified at Bates Nos. DEF001611-DEF2326. ECF No. 21 at 10. Defense counsel also sent an email stating that plaintiffs still had adequate time to complete discovery because fact discovery did not close until June 1, 2026, and that the records had not been produced by the estimated production dates due to

their volume. ECF No. 21-2 at 23. Counsel stated that four members of staff from her firm had assisted in reviewing, redacting, and preparing the records, requiring over 230 hours of work; the records were not ready for her review until the last week of August; and counsel had been occupied with work in other cases. Id. She further asserted that the deadlines at issue had been pushed by plaintiffs' counsel, were sooner than she had offered, and she was "woefully unprepared for how extensive this discovery would be" but had nevertheless agreed to provide amended responses, a privilege log, and records for other in-custody deaths. Id. Counsel advised that she could not give an estimate on additional production but was reviewing the records and producing them on a rolling basis, that production was taking considerable time because the requests were "burdensome and oppressive," and that she could not produce a privilege log until after all records had been reviewed. Id. at 23-24.

On October 30, 2025, the court granted plaintiff's motion to compel and awarded expenses but denied sanctions without prejudice. ECF No. 22. The court declined to find a waiver of privilege, explaining it was "reluctant to order the production of documents falling within the scope of the attorney-client privilege when the magnitude and nature of the allegedly privileged materials at issue is currently unknown. . . . Instead, defendant will be required to either produce the documents or a privilege log. If defendant fails to produce a privilege log or such log is inadequate to assess whether the withheld documents are privileged, any assertions of privilege will be overruled." ECF No. 22 at 10. On November 20, 2025, the undersigned ordered the county to comply with production required by the October 30, 2025 order no later than December 19, 2025. ECF No. 26.

## IV. Motions to Compel Further Responses

The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be

admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The court, however, must limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" or if the party who seeks discovery "has had ample opportunity to obtain the information by discovery;" or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). The purpose of discovery is to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958) (citation omitted), and "to narrow and clarify the basic issues between the parties," Hickman v. Taylor, 329 U.S. 495, 501 (1947).

Under Federal Rule of Civil Procedure 37, a motion to compel may be made if "a party fails to produce documents or fails to respond that inspection will be permitted . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The party seeking to compel discovery has the burden of showing that the discovery sought is relevant or that its denial will cause substantial prejudice. Aros v. Fansler, 548 F. App'x 500, 501 (9th Cir. 2013) (citing Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002)). The opposing party is "required to carry a heavy burden of showing why discovery was denied." Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

General or boilerplate objections, without explanation, are not prohibited but are insufficient as a sole basis for an objection or privilege claim. Burlington N. & Santa Fe Ry. Co. v. United States Dist. Court of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005). Privilege logs are due at the time a discovery response is made, see Fed. R. Civ. P. 26(b)(5) (requiring privilege log for withheld documents); Fed. R. Civ. P. 34(b)(2)(A) (objections are due within 30 days), and improper assertions of privilege in the privilege log, or an untimely privilege log, may (but do not necessarily) result in waiver, Burlington, 408 F.3d at 1149 ("[W]e also reject a *per se* waiver rule that deems a privilege waived if a privilege log is not produced within Rule 34's 30-day time limit.").

////

A. Plaintiff's Motion Regarding Privilege Logs (ECF No. 38)

Plaintiffs move to compel a revised privilege log, asserting that "Defendants produced an untimely privilege log *one year* after discovery requests were propounded and, even after a year to support any privilege-based designations, Defendants only produced an unsupported, deficient privilege log." ECF No. 42 at 25. The County defendants argue that the privilege log was both timely served in accordance with the court's prior order setting a December 19, 2026 deadline, and that the log is legally adequate. Id. at 25-26.

*1. Timeliness*

Plaintiff argues that the privilege log was untimely produced, but the court agrees with the County that service of the privilege log was sufficiently timely in light of the court's prior orders. The log was due December 19, 2025, and defendants transmitted the log electronically on that date. ECF No. 42 at 4, 8. An amended log was served on December 20, 2025. Id. Any delay was minimal, and it is undisputed that plaintiffs received the logs. Plaintiff attempts to re-litigate the *prior* delay addressed in their previously filed motion (ECF No. 42 at 10-11) and the court declines the invitation to factor the previous delay into any delay that occurred after the court's October 30, 2025, order.

*2. Adequacy of Privilege Assertions*

As to the adequacy of the privilege log, plaintiffs argue that the produced log is insufficient for plaintiffs to assess the claims of privilege because the log does not identify the roles of persons included in communications, does not identify the nature of the documents for which privilege is asserted, and does not include the dates documents were generated or prepared. ECF No. 42 at 13-14. The court disagrees. A party meets its burden of demonstrating the applicability of the attorney-client privilege by submitting a privilege log that identifies as to each document withheld: "(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated." In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992). The privilege log at issue, filed as a sealed document, is located at

ECF No. 41-2 at 106-114. The log includes the names of the authors and recipients, subject matter, date, brief but adequate descriptions, the nature of the privilege, and bates numbers. See e.g., ECF No. 42-1 at 111. Having reviewed the log, the court finds it is adequate and rejects plaintiffs' argument to the contrary, including the arguments that it the log is insufficiently descriptive to assert attorney-client privilege, work product doctrine (ECF No. 42 at 16), or that the log is unsupported by evidence (id.). The log is sufficient.

*3. Other Arguments*

Plaintiffs argue that even if privilege was adequately asserted, there is reason to believe that the "crime-fraud exception" negates privilege based on defendants' discovery conduct and circumstances of unpreserved recordings in this case. ECF No. 42 at 14-15. Again, plaintiffs ask the court to look back to their initial requests made pursuant to the California Public Records Act, and to review the chain of events from that time to infer a larger scheme of malfeasance in discovery on the part of the County defendants. Id. The court addressed the history of discovery in this case in its prior order and declines the invitation to revisit it.

Plaintiffs also argue that assertions of Official Information Privilege were waived because the County first raised the privilege in the log without explanation or support. The official information privilege is a "qualified privilege" that "must be formally asserted and delineated in order to be raised properly." Kerr v. United States Dist. Court, 511 F.2d 192, 198 (9th Cir. 1975). First, the responding party must serve an objection which "invokes the official information privilege by name." Kelly v. City of San Jose, 114 F.R.D. 653, 669 (N.D. Cal. 1987). Second, the responding party must provide the requesting party with a privilege log or equivalent document that identifies the withheld information. Hampton v. City of San Diego, 147 F.R.D. 227, 230 (S.D. Cal. 1993). Third, the responding party must make a "substantial threshold showing" by way of a declaration or affidavit from a responsible official "in an executive policy position"—as opposed to a "subordinate official"—with personal knowledge. Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995).

The County defendants counter that in fact the relevant objections were timely made in their discovery responses (ECF No. 42 at 22-23), they did provide the privilege log, and, though it

did not initially produce the required affidavit, that affidavit was produced on January16, 2026 with its supplemental discovery responses. ECF No. 42 at 24; Declaration of Jonathan Paul in Support of Opposition to Plaintiff's Motion to Compel Joint Statement ("Paul Decl.") at ¶¶ 3 & 4. Accordingly, the court does not find any grounds for relief on this point.

*4. Conclusion*

For the reasons set forth above, plaintiffs' motion (ECF No. 38) is DENIED. No sanctions will be issued against either party, and in light of the complex history of discovery litigation in this case, the interest of justice dictates that each party bears its own fees and costs in connection with this motion.

B. Defendant's Motion to Compel Interrogatory Responses (ECF No. 95)

Defendant Colton Dutey moves to compel plaintiff the Estate to provide supplemental responses to interrogatories asking the Estate to identify the allegedly unconstitutional policies, practices, and/or customs that were allegedly the moving force behind Wright's in-custody death. ECF No. 99 at 2. The Estate counters that motion to compel is moot because there is currently no operative pleading which alleges claims against Dutey and which could serve as the basis for compelling discovery. Id. Further, the Estate argues that Dutey seeks discovery related to "Monell claims" which are not applicable to individuals, that the Estate's responses are sufficient because Dutey's requests are limited to "unconstitutional policies" which the Estate has explained are not at issue, and that substantial outstanding discovery renders a more detailed interrogatory response premature. ECF No. 99 at 2. Both parties request an award of fees. Id.

The court agrees with the Estate that this motion must be denied, not because the Second Amended Complaint was dismissed before the motion to compel was filed and the TAC was filed after, but because there have been subsequent productions and developments that may or may not have adequately addressed Dutey's concerns and which are not sufficiently addressed in the Joint Statement. ECF No. 99 at 51-52. The court declines to compel production based on incomplete and likely outdated information. The motion (ECF No. 95) is accordingly DENIED without prejudice. No sanctions will be issued against either party, and in light of the complex history of discovery litigation in this case, the interest of justice dictates that each party bears its own fees

and costs in connection with this motion.

C. Plaintiffs' Motion to Compel Interrogatory Responses (ECF No. 105)

Plaintiffs ask the court to compel the County defendants to provide complete responses to two related interrogatories, which read as follows:

INTERROGATORY NO. 3:

> IDENTIFY each person who interacted with JEREMIAH WRIGHT while he was housed in the Stanislaus County Sheriffs Detention Center, Unit B, Cell B124, from May 24, 2024, to May 27, 2024,including: (a) The name of each person; (b) The position of each person (e.g., correctional deputy, nurse, inmate, etc.); (c) The title/rank of each person (e.g., floor officer, nurse, trustee, etc.); (d) The date and time when each person interacted with JEREMIAH WRIGHT; and (e) The nature of the interaction each person had with JEREMIAH WRIGHT (e.g., safety check, medical check, CIWA assessment, pill distribution, conversation, etc.).

INTERROGATORY NO. 5:

> IDENTIFY each person who was present during checks on JEREMIAH WRIGHT while he was housed in the Stanislaus County Sheriffs Detention Center, from May 24, 2024, to May 27, 2024, including: (a) The name of each person; (b) The position of each person (e.g., correctional deputy, nurse, physician, etc.); (c) The title/rank of each person (e.g., floor officer, LVN, MD, etc.); (d) The date and time when each person was present during a check on JEREMIAH WRIGHT; and (e) The nature of the check during which each person was present (e.g., safety check, medical check, CIWA assessment, pill distribution, etc.).

ECF No. 109 at 4-5. The County defendants contend that these requests are compound, overbroad, and vague as to the term "interacted with." ECF No. 109 at 5.

Following meet and confer efforts, the County offered to produce a "list of individuals working on Jeremiah Wright's pod during his incarceration" (ECF No. 109 at 11) which the County contended could be used in conjunction with already produced custody and medical records, as well as depositions, to determine the identity of any person of interest to plaintiffs. Id. at 13-14. Plaintiffs contend that the County's offer is insufficient and constitutes an incomplete response to the interrogatories because the County does not identify which documents within the substantial discovery produced are responsive and can be correlated with the list of individuals provided, and because spoliation resulted in gaps in production such that plaintiffs might not be able to identify all of the individuals that were present and/or interacted with Wright from a

simple list of employees. ECF No. 109 at 10-12.

The court agrees that the County defendants' proposed compromise is sufficient. Plaintiffs are equally as capable as the County defendants of matching the names on the proposed list to the previously produced documents by running term searches. The court declines to compel any further response. Accordingly, the motion to compel at ECF No. 105 is DENIED. No sanctions will be issued against either party, and in light of the complex history of discovery litigation in this case, the interest of justice dictates that each party bears its own fees and costs in connection with this motion.

## V. Motions for Sanctions

Federal Rule of Civil Procedure 26(g) requires that every discovery response be signed by at least one attorney of record and provides that such signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the response is consistent with the rules of procedure and is not made for an improper purpose. Fed. R. Civ. P. 26(g)(1)(B)(i). "If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). The court uses an objective standard to determine whether a party has violated the rule. Or. RSA No. 6, Inc. v. Castle Rock Cellular of Or. Ltd., 76 F.3d 1003, 1007 (9th Cir. 1996).

Plaintiff filed a motion for sanctions regarding unpreserved recordings on January 14, 2026. ECF No. 39. Then, on January 16, 2026, the County served by mail "supplemental" discovery responses, including 19 hours, 55 minutes, and 15 seconds of previously-unproduced recordings—28 days after the Court-ordered deadline of December 19, 2025. ECF No. 75 at 2. Plaintiff brought a second motion for sanctions regarding the unproduced video on March 25, 2026. Due to the production of videos and changes in circumstance that have occurred since plaintiff's January 14, 2026 motion, the undersigned DENIES the motion (ECF No. 39) as MOOT, and moves forward with the second-filed motion.

Turning to the pending motion or sanctions at ECF No. 67, the parties filed the required joint statement at ECF No. 75. Plaintiffs contend that the County defendants should be

sanctioned for violating the Court's order that by "no later than December 19, 2025," ECF No. 26 at 4, "a. Defendant [Stanislaus] County shall provide amended responses, including any applicable privilege log, to Request for Production No. 1 and Request for Production No. 82" and "b. The supplemental responses shall be signed by counsel of record certifying that a second search was conducted for responsive documents, that all responsive documents have been produced, and explaining the steps taken to complete the second search." ECF No. 22 at 15. On December 19, 2025, the County responded, and its counsel certified, that "all responsive nonprivileged documents have been produced…" yet, on January 16, 2026, the County served by mail "supplemental" discovery responses, including 19 hours, 55 minutes, and 15 seconds of previously- unproduced recordings—28 days after the Court-ordered deadline of December 19, 2025.

A court may impose sanctions "for not obeying a discovery order," including "[i]f a party or a party's officer, director, or managing agent … fails to obey an order to provide or permit discovery…" Fed. R. Civ. P. 37(b)(2)(A). District courts have "broad discretion regarding the type and degree of discovery sanctions it may impose pursuant to Rule 37 and can impose any sanction it sees as just." Jensen v. BMW of N. Am., LLC, 331 F.R.D. 384, 386 (S.D. Cal. 2019); see also Ritchie v. United States, 451 F.3d 1019, 1026 (9th Cir. 2006) ("District Courts have broad discretion in imposing discovery sanctions."). Here, though there was clearly delay and inefficiency on the party of the County, the undersigned declines to issue sanctions for three reasons. First, the requested video has now been produced, so there should be no substantive harm to plaintiffs' case. Second, despite the fact that this case has been pending for nearly two years, it remains at the pleading stage: the operative TAC was filed relatively recently, in late May of 2026, and there are motions to dismiss pending. ECF Nos. 100, 102. Again, this fact undercuts any argument that plaintiffs are substantively harmed by the belated production. Third and finally, discovery in this case has been over-litigated. At a minimum, plaintiffs should have withdrawn their first motion for sanctions when the change in circumstances rendered it moot. For all of these reasons, the motion for sanctions at ECF No. 67 is DENIED.

////

VI. CONCLUSION

For the reasons set forth above, the discovery motions at ECF Nos. 38, 39, 67, 95 and 105 are DENIED. The parties shall each bear their own fees and costs.

DATED: August 12, 2026

Allison Claire

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE