UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ESTATE OF JEREMIAH WRIGHT, A.W., RODNEY WRIGHT, and ELLEN WRIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS, STANISLAUS COUNTY SHERIFF'S DEPARTMENT, JEFF DIRSKE, COLTON DUTEY, VICTOR SANTOYO, GURWINDER SINGH, JAVIER GOMEZ, CHRISTOPHER GALLO, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., SUNNY BASSI, IRENE GARRAD, PHAJIKARN TSE, HARPREET BOPARAI-SEKHON, KATHLEEN GARCIA, and JOE CAPORGNO,<br><br>Defendants. | No. 2:24-cv-02505 WBS AC<br><br>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT |

----oo0oo----

This case centers on the detention and death of decedent Jeremiah Wright, who died at Stanislaus County Sheriff's Detention Center on May 27, 2024. Plaintiff A.W., decedent's

biological child, brings this action on behalf of himself in his individual capacity, on behalf of the Estate of Jeremiah Wright as the estate's real party in interest, and on behalf of decedent as decedent's successor-in-interest. (Third Am. Compl. ("TAC") ¶¶ 10, 11). Plaintiffs Rodney Wright and Ellen Wright, as biological father and mother of decedent, respectively, bring this action on their own behalf in their individual capacities. (TAC ¶¶ 12, 13.)

I. Relevant Facts as Alleged

Decedent suffered from "substance abuse disorders and withdrawal." (TAC ¶ 59.) On May 23, 2024, a California Highway Patrol officer reported arresting decedent for driving under the influence. (TAC ¶¶ 62–65.) The officer reported that decedent exhibited signs of intoxication (e.g., slurred speech, red and watery eyes, a strong odor of alcohol), and that decedent stated he had consumed six shots of vodka. (TAC ¶ 63.) The officer administered two preliminary alcohol screening tests, which showed a blood alcohol content of .268% and .269%. (TAC ¶ 64.) After being taken to Doctors Medical Center in Modesto, decedent was then transported to the Stanislaus County Sheriff's Detention Center, arriving at around 12:46 AM. (TAC ¶¶ 65-68.)

Shortly thereafter, a county deputy found a small plastic bag containing approximately 15 Oxycodone pills in decedent's wallet. (TAC ¶ 71.) Decedent was then placed on Clinical Institute Withdrawal Assessment for Alcohol (CIWA-Ar) and taken to a sobering cell. (TAC ¶¶ 72–74.)

At 1:42 AM, shortly after arriving at the sobering

cell, decedent "collapsed and fell to the ground," where he "remained lying motionless." (TAC ¶ 75.) His condition worsened, and he "was in such great pain that he began writhing in pain and crying as he remained lying on the floor of the cell while visible to jail staff." (TAC ¶¶ 101-05.) Between 6:07 AM and 7:01 AM, defendant Javier Gomez, a custodial deputy, observed decedent in his sobering cell three separate times, where decedent was motionless and unresponsive. (TAC ¶¶ 106, 109, 113.) Gomez nevertheless failed to summon medical help for decedent. (Id.)

Later that day, around 3:00 PM, decedent was transferred to a single cell. (TAC ¶ 149.)[1] While at the single cell, decedent's "medical condition continued to deteriorate," "and his medical needs were obvious based on the symptoms of withdrawal and/or overdose exhibited." (TAC ¶ 153.) At 4:08 PM, defendant Gurwinder Singh, a custodial deputy, reported that decedent "Declined Recreation." (TAC ¶ 154.) However, this report was "false," as decedent "was too ill to leave his cell or respond to any offer to leave his cell." (Id.) The following day, at 7:09 AM and 7:12 AM, respectively, Gomez similarly reported that decedent "Declined Recreation" and "Declined Shower." (TAC ¶¶ 159, 160.) These reports were also allegedly false, given decedent's illness and inability to respond. (Id.)

---

[1] Because defendants County of Stanislaus and Stanislaus County Sheriff's Department allegedly "spoliated/failed to preserve the jail surveillance recordings from the area of [decedent's] cell captured from May 24, 2024, at 3:11:03 p.m. to May 26, 2024, at 5:59:48 p.m.," plaintiffs allege the facts occurring within this time frame only "on information and belief." (TAC ¶ 151.)

At 8:13 AM, Singh created another "false" report that decedent "Declined Recreation," despite decedent's illness and inability to respond. (TAC ¶ 168.)

Later that day, decedent "experienced a medical emergency causing him to become unconscious and unresponsive inside of his cell." (TAC ¶ 177.) Decedent's "condition deteriorated due to untreated withdrawal symptoms and/or" from decedent's "access to" and ingestion of "a fatal quantity of fentanyl." (Id.) At 8:12 PM, defendant Christopher Gallo, a custodial deputy "responsible for monitoring and supervising [decedent] and his cell" (TAC ¶ 178), "reported conducting a 'security check' on [decedent]" (TAC ¶ 181). Decedent, however, "was not adequately checked to determine that his presentation indicated the need for medical treatment." (Id.) Then, at 10:56 PM, Gallo conducted another security check. (TAC ¶ 184.) Gallo "did a double-check and nearly turned back a third time as he walked by [decedent]'s cell because [decedent] was visibly distressed." (Id.) But Gallo "ignored [decedent's] obvious medical needs, after peaking [sic] in the cell two times."[2] (Id.)

Decedent ultimately died at 1:20 AM the following day. (TAC ¶ 192.) The Stanislaus County Sheriff's Department

---

[2] Plaintiffs make similar allegations against individuals who are not defendants; individuals who are defendants but who do not bring the current motion to dismiss; and individuals who are defendants and did bring the current motion to dismiss, but who nevertheless failed to raise timely arguments in their motion (as will be discussed further below). As the factual allegations against these individuals are not relevant to the court's order, the court omits any specific factual allegations against these individuals.

Coroner's Division reported decedent's cause of death as "Acute Fentanyl Toxicity." (TAC ¶ 194.)

Plaintiffs bring eleven causes of action in their Third Amended Complaint ("TAC") based on the events leading up to decedent's death. (TAC ¶¶ 222-305.) Defendants County of Stanislaus, Stanislaus County Sheriff's Department, Jeff Dirkse, Colton Dutey, Victor Santoyo, Gurwinder Singh, Javier Gomez, and Christopher Gallo (together, "County Defendants") now move to dismiss the TAC under Rule 12(b)(6). (Docket No. 102.)

## II. Procedural Background

Plaintiffs filed their original complaint on September 16, 2024. (Docket No. 1.) The County Defendants who were named in the original complaint filed an answer on November 15, 2024 (Docket No. 7), which they amended on December 4, 2024 (Docket No. 8). Plaintiffs then filed their first amended complaint on January 13, 2026. (Docket No. 36.) Although the originally named County Defendants moved to strike the first amended complaint (Docket No. 51), the parties ultimately resolved the dispute by stipulating to the filing of a second amended complaint (Docket No. 66). Plaintiffs filed that second amended complaint on March 31, 2026, adding three new defendants -- namely, Javier Gomez, Gurwinder Singh, and Christopher Gallo. (Docket No. 74.) County Defendants moved to dismiss the second amended complaint. (Docket No. 77.) The court granted defendants' motion, but not on the merits of the motion. (Docket No. 96.) Instead, the court dismissed the second amended

complaint as an "example of textbook shotgun pleading." (Id. at 2.)

Plaintiffs thereafter filed the subject TAC, which defendants now move to dismiss.

## III. Legal Standard

A defendant may move to dismiss a claim under Rule 12(b)(6) if the allegation "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Reviewing a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," Iqbal, 556 U.S. at 679, and to "draw all reasonable inferences in favor of the nonmoving party," Boquist v. Courtney, 32 F.4th 764, 773 (9th Cir. 2022) (citations and quotations omitted). Stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements." Twombly, 550 U.S. at 555. "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." Boquist, 32 F.4th at 773-74

(citations, quotations, and alterations omitted).

## IV. Discussion

### A. Timeliness

Plaintiffs argue that County Defendants' motion is untimely because County Defendants could have moved to dismiss the original complaint on the same bases asserted here, but they instead filed an answer to the original complaint. (Docket No. 108 ("Opp.") at 12 (citing Docket No. 7).) "Generally, a defense asserted in a Rule 12(b)(6) motion to dismiss must be made before filing an answer." Best Fresh LLC v. Vantaggio Farming Corp., No. 3:21-CV-00131-BEN-WVG, 2022 WL 4112231, at *10 (S.D. Cal. Sept. 8, 2022). Where a plaintiff files a post-answer amended complaint, a motion to dismiss the amended complaint "can only be heard to the extent the arguments set forth were not previously available to the moving party." Id. (citing Pascal v. Concentra, Inc., No. 19-cv-02559-JCS, 2020 WL 4923974, at *2 (N.D. Cal. Aug. 21, 2020).) Accordingly, for a post-answer motion to dismiss, "a defendant may attack only new allegations or claims not contained in the original complaint." Id. (citation and quotations omitted); see also Brooks v. Caswell, No. 3:14-cv-01232-AC, 2016 WL 866303, at *3 (D. Or. Mar. 2, 2016) ("Allowing a post-answer motion to dismiss on an amended complaint where the amendment merely substantiates existing claims would render the Rule 12(b) restriction on post-answer motions meaningless.").

Because plaintiffs have added new defendants since the filing of defendants' answer -- namely, Javier Gomez, Gurwinder Singh, and Christopher Gallo -- County Defendants' arguments with

respect to these defendants could not have been made in response to plaintiffs' original complaint. Accordingly, County Defendants' motion is not barred with respect to these defendants.

With respect to the remaining defendants, however, County Defendants do not dispute that they could have made these arguments in a motion to dismiss plaintiffs' original complaint. (Docket No. 110 ("Reply") at 1-2.) County Defendants instead simply insist that their current motion "be treated as a motion for judgment on the pleadings" rather than a motion to dismiss. (Reply at 1 (citing Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980).) But a motion for judgment on the pleadings under Rule 12(c) requires that pleadings be closed. Brooks, 2016 WL 866303, at *2; see also Aldabe, 616 F.2d at 1093 (acknowledging "it is only after the pleadings are closed that [a] motion for judgment on the pleadings is authorized"). Here, the TAC is the operative complaint, and defendants have not yet filed an answer to this complaint. It would thus be improper for the court to convert defendants' motion to dismiss into a motion for judgment on the pleadings. Accordingly, since defendants do not dispute that they could have brought their failure-to-state-a-claim defenses for these defendants in response to the original complaint, defendants have failed to show they are entitled to resolution of these defenses in their current motion to dismiss.[3]

The court thus denies County Defendants' motion with

[3] Defendants may nevertheless assert these failure-to-state-a-claim defenses "in any pleading allowed or ordered under Rule 7(a)," "by a motion under Rule 12(c)," or "at trial." Fed. R. Civ. P. 12(h)(2); see Brooks, 2016 WL 866303, at *4.

respect to each County Defendant, save Javier Gomez, Gurwinder Singh, and Christopher Gallo. The court will accordingly proceed in analyzing County Defendants' arguments for dismissal only with respect to Javier Gomez, Gurwinder Singh, and Christopher Gallo.[4]

B. 42 U.S.C § 1983

1. Failure to Provide Adequate Medical Care

Plaintiffs bring a claim against defendants under 42 U.S.C. § 1983 for violation of the Due Process Clause of the Fourteenth Amendment. "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979). The failure to "address the medical needs of pretrial detainees" amounts to "punishment" in violation of the Fourteenth Amendment "where detention officials are deliberately indifferent" to the detainee's serious medical needs. Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1242 (9th Cir. 2010), overruled on other grounds by Castro v. Cnty. of Los Angeles, 833 F.3d 1060 (9th Cir. 2016); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014). The elements of deliberate indifference are:

> (i) the defendant made an intentional decision with respect to the conditions under which the [decedent] was confined; (ii) those conditions put the [decedent] at substantial risk of suffering serious harm; (iii)

---

[4] The court's use of the word "defendants" shall hereinafter refer only to defendants Javier Gomez, Gurwinder Singh, and Christopher Gallo.

> the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the [decedent's] injuries.

Gordon v. Cnty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). With respect to the third element, plaintiffs "must prove more than negligence but less than subjective intent -- something akin to reckless disregard." Id. (citations and quotations omitted).

Defendants argue plaintiffs failed to adequately allege deliberate indifference against Deputies Singh and Gomez. (Docket No. 102-1 ("Mot.") at 11-13.) Defendants assert that "[t]he TAC alleges that these deputies conducted timely cell checks and documented that decedent declined to leave his cell for recreation and showering." (Id.) Defendants further assert that defendants' security checks on decedent complied with California regulations, which, according to defendants, require safety checks to be done on detainees "with no more than a 60-minute gap between checks." (Mot. at 8 (citing Docket 102-2; 15 C.C.R. § 1027.5)).[5]

---

[5] Defendants request that the court take judicial notice of this purported regulation. (Docket No. 102-2.) Defendants' request is unopposed, and defendants have provided sufficient information to establish that the document consists of California Code of Regulations, Title 15, section 1027.5, and that the regulation provides "[t]here shall be no more than a 60-minute lapse between safety checks." (Id.) The court accordingly "must" take judicial notice of these facts. Fed. R. Evid. 201(c)(2); Sunkett v. Boerum, No. 1:21-CV-01137-HBK (PC), 2024 WL

The TAC, however, alleges that, when Deputies Singh and Gomez encountered decedent and offered him either recreation or shower time, decedent "was too ill to leave his cell or respond to any offer to leave his cell."[6] (TAC ¶¶ 154, 159, 160.) Moreover, decedent's condition was "obvious based on the symptoms of withdrawal and/or overdose exhibited" (TAC ¶ 153), particularly since decedent was already under Clinical Institute Withdrawal Assessment Alcohol Scale monitoring (TAC ¶ 73). Gomez and Singh nevertheless failed to summon adequate medical help for decedent. Even if there was "no more than a 60-minute lapse between [these] safety checks," 15 C.C.R. § 1027.5, plaintiffs' allegations are still sufficient to plead that Singh and Gomez

---

4369900, at *2 (E.D. Cal. Sept. 30, 2024).

[6] Defendants argue that the court should not accept the allegation that decedent "was too ill to leave his cell or respond to any offer to leave his cell," arguing that the allegation is conclusory, only offered "on information and belief," and contradicted by reports written on decedent's condition prior leading up to his death. (Mot. at 11; Reply at 2-3.) But whether the reports contradict this allegation is irrelevant, because plaintiffs have alleged that these reports were false. (See, e.g., TAC ¶¶ 106, 109, 113, 154, 159, 160, 181, 184.) Moreover, Defendants do not respond to Plaintiff's argument that, because the jail surveillance records of decedent's cell "were spoliated/not preserved, the events occurring during [decedent's detention] must be alleged 'on information and belief.'" (Opp. at 2 n.2); see also Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017) (plaintiffs are permitted to "plead[] facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant") (citations and internal quotations omitted); Padilla v. California, No. 2:15-cv-02509-JAM-CKD, 2016 WL 8730763, at *2 (E.D. Cal. Feb. 19, 2016) ("Defendants implicitly concede [plaintiff's] point by not addressing [the] argument in their Reply brief.").

were deliberately indifferent to a substantial risk of decedent's suffering serious harm. See Enyart v. Cnty. of San Bernadino, No. 5:24-CV-00526-RGK-SHK, 2025 WL 1090954, at *5 (C.D. Cal. Mar. 14, 2025) (a reasonable jury could conclude deliberate indifference where deputy initially observed decedent "hunched over and unresponsive" and then "lying on the floor of his cell with his head near the toilet"); Est. of Silva v. City of San Diego, No. 3:18-CV-2282-L-MSB, 2020 WL 6946011, at *10 (S.D. Cal. Nov. 25, 2020) (plaintiff adequately pleaded deliberate indifference where county employees failed to request medical attention despite knowing of "Decedent's deteriorating health as they personally observed him decompensate when they checked on him in his temporary holding cell").

Defendants similarly argue plaintiffs failed to allege deliberate indifference against Deputy Gallo, asserting that the TAC shows Gallo had performed proper security checks on decedent. (Mot. at 4-5.) But as above, the TAC alleges that decedent's "medical needs were obvious based on the symptoms of withdrawal and/or overdose exhibited" (TAC ¶ 153), and Gallo did not "adequately check[] [decedent] to determine that his presentation indicated the need for medical treatment" (TAC ¶ 181). Indeed, Gallo "did a double-check and nearly turned back a third time as he walked by [decedent]'s cell because [decedent] was visibly distressed," but Gallo "ignored [decedent's] obvious medical needs." (TAC ¶ 184.) As with the allegations against Singh and Gomez, these facts are sufficient to plead deliberate indifference.

2. Unwarranted Interference with Familial Association

Plaintiffs bring a separate § 1983 claim for unwarranted interference with familial association. Although plaintiffs premise liability on both the First and Fourteenth Amendments, violations under either amendment are "measured by the same standard." Kaur v. City of Lodi, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017).

To plead unwarranted interference, plaintiffs "must, as a threshold matter, show a government deprivation of life, liberty, or property." Capp v. Cnty. of San Diego, 940 F.3d 1046, 1060 (9th Cir. 2019). Plaintiffs must also show that the government's conduct "shocks the conscience in depriving family members of a liberty interest in the companionship and society of a family member." Est. of Chivrell v. City of Arcata, 694 F. Supp. 3d 1218, 1231 (N.D. Cal. 2023) (quotations omitted). "'A prison official's deliberately indifferent conduct will generally shock the conscience so long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner.'" Essex v. Cnty. of Imperial, No. 3:24-CV-00763-L-VET, 2025 WL 525110, at *5 (S.D. Cal. Feb. 18, 2025) (quoting Lemire v. Cal. Dep't of Corr. and Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013)).

Defendants argue plaintiffs failed to allege conduct that "shocks the conscience," reiterating their same arguments that plaintiffs failed to allege deliberate indifference. (Mot. at 17-18.) The court has already rejected defendants' arguments.

Since plaintiffs have adequately alleged deliberate indifference to decedent's medical needs against defendants, and since there was plainly time for defendants to deliberate in their repeated failures to provide decedent with adequate medical care, plaintiffs have adequately alleged unwarranted interference with familial relations. Est. of Prasad ex rel. Prasad v. Cnty. of Sutter, 958 F. Supp. 2d 1101, 1126 (E.D. Cal. 2013) ("In a prison setting, deliberate indifference to an inmate's basic human and medical needs constitutes 'constitutionally shocking' action.") (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 851–52 (1998)).

C. Americans with Disabilities Act ("ADA")

Plaintiffs allege defendants violated decedent's rights under the Americans with Disabilities Act ("ADA"). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "The Supreme Court has held that Title II applies to state prisons." Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (citing Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998)).

"To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or

activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability." Id. (alterations omitted).

The only specific "disabilities" decedent is alleged to have had are "substance abuse disorders and withdrawal." (TAC ¶ 59.) Even assuming decedent's substance abuse qualifies as a disability under the ADA, plaintiffs have failed to allege decedent was discriminated against because of his disability.

Plaintiffs argue they adequately allege discrimination because they allege defendants failed to provide decedent a reasonable accommodation for his disability. (Opp. at 13); see Updike v. Multnomah Cnty., 870 F.3d 939, 951 (9th Cir. 2017) ("The failure to provide reasonable accommodation can constitute discrimination.") (citations and internal quotations omitted). But the alleged failures to provide "reasonable accommodations" for decedent's disability are simply failures to provide generic medical care for decedent. (See Opp. at 13 (citing TAC ¶¶ 232-33, 239-40).)[7] Failures to provide generic medical care are not

---

[7] The specific alleged "accommodations" plaintiffs identified in their opposition are

> monitoring and supervising based on serious medical needs, summoning necessary medical care, and timely responding to serious medical needs . . . conducting a timely and adequate medical screening; issuing routine medical orders or an urgent referral to a medical provider; transferring to a facility that could provide necessary medical care or treatment; monitoring and supervision based on serious medical needs; summoning necessary medical care; and/or timely responding to serious medical needs.

covered by the ADA. See Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); id. ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice.") (quoting Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996)); see also Pamplin v. Lucas, No. 22-15284, 2023 WL 3478412, at *2 (9th Cir. May 16, 2023) (finding genuine issue of fact as to whether defendant discriminated against plaintiff, where the "allegation [was] not that [plaintiff] was denied adequate medical treatment, but rather that he was denied a transfer to a flat yard housing unit to accommodate his physical disabilities"). Plaintiffs accordingly failed to plead an ADA claim against defendants.

D. Rehabilitation Act

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), "creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance." Fleming v. Yuma Reg'l Med. Ctr., 587 F.3d 938, 940 (9th Cir. 2009) (citation omitted). To state a claim under this section, plaintiffs must show that "(1) [decedent] [was] an individual with a disability; (2) [decedent was] otherwise qualified to receive the benefit; (3) [decedent] was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal

---

(Opp. at 13 (citing TAC ¶¶ 232-33, 239-40).)

financial assistance." Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

"As 'Title II of the ADA was expressly modeled after Section 504,'" the two claims are "analyzed together." Ledford v. California, No. 2:15-cv-02381-TLN-EFB, 2018 WL 4352933, at *4 (E.D. Cal. Sept. 11, 2018) (quoting Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir. 1999)). Accordingly, since plaintiffs failed to adequately allege discrimination under Title II of the ADA, plaintiffs similarly failed to adequately allege discrimination under Section 504 of the Rehabilitation Act. Id. at *5.

E. Failure to Summon Medical Care

Plaintiffs allege defendants failed to summon medical care for a prisoner in custody under California law. Cal. Gov't Code § 845.6. "To state a claim for relief under § 845.6, a prisoner must allege facts establishing three elements: (1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." Lapachet v. Cal. Forensic Med. Grp., Inc., 313 F. Supp. 3d 1183, 1196-97 (E.D. Cal. 2018). "Liability under section 845.6 is limited to serious and obvious medical conditions requiring immediate care." Id. at 1197.

Defendants simply reassert their same argument that the TAC fails to show any wrongdoing by defendants. But, as discussed previously, plaintiffs adequately alleged that defendants, on several occasions, encountered decedent exhibiting

obvious symptoms of withdrawal or overdose, and yet failed to summon medical help. These allegations are sufficient to state a claim for failure to summon medical care. See Medina v. Cnty. of Los Angeles, No. CV 19-3808-GW-EX, 2020 WL 3964793, at *14 (C.D. Cal. Mar. 9, 2020) (holding defendants' failure to summon medical care at a time "when they had reason to know of [decedent's] medical condition because of their obligation to perform timely safety-checks, demonstrates that plaintiffs can at a minimum demonstrate the existence of a triable issue of fact with respect to each of the three elements required for a Section 845.6 claim").

F. Tom Bane Civil Rights Act

Plaintiffs also bring a claim against defendants under California's Tom Bane Civil Rights Act (the "Tom Bane Act"). Cal. Civ. Code § 52.1. The elements of a Tom Bane Act violation are: "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." Wilkins v. Heslop, No. 2:20-CV-01622 DJC SCR P, 2025 WL 1192733, at *9 (E.D. Cal. Apr. 24, 2025) (citations and quotations omitted). The "threat, intimidation, or coercion," however, need not "be independent from the constitutional violation alleged." Reese v. Cnty. of Sacramento, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting Cornell v. City & Cnty. of San Francisco, 17 Cal. App. 5th 766, 800 (1st Dist. 2017)). In other words, "[t]he elements of a Bane Act claim are essentially identical to the elements of a § 1983 claim, with the

added requirement that the government official had a specific intent to violate a constitutional right." Chinaryan v. City of Los Angeles, 113 F.4th 888, 907 (9th Cir. 2024) (citations and quotations omitted). Specific intent "may be shown by demonstrating an official's reckless disregard for a person's constitutional rights." Id.

Defendants argue plaintiffs failed to allege specific intent to violate decedent's rights. (Mot. at 22-23.) The court has already found, however, that plaintiffs adequately alleged deliberate indifference against defendants. Plaintiffs have thus adequately alleged specific intent for their Tom Bane Act claim. Scalia v. Cnty. of Kern, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) ("The Court has found that Plaintiff adequately pleaded a claim for deliberate indifference, which requires alleging reckless disregard; Plaintiff has therefore adequately alleged that [defendant] acted with the requisite specific intent under the Bane Act."); Brown v. Cnty. of Mariposa, No. 1:18-cv-01541-LJO-SAB, 2019 WL 1993990, at *12 (E.D. Cal. May 6, 2019).

Defendants further argue that, because the Tom Bane Act is not a wrongful death statute, and because plaintiffs A.W., Rodney Wright, and Ellen Wright have not alleged that they were personally subject to Tom Bane Act violations, they cannot recover in their individual capacities. (Mot. at 22.) Defendants are correct that plaintiffs Rodney Wright and Ellen Wright cannot recover under the Tom Bane Act. The Tom Bane Act "is not a wrongful death statute." Est. of Valentine v. Cnty. of Merced, No. 1:23-CV-01697-JLT-SAB, 2024 WL 4374303, at *41 (E.D.

Cal. Oct. 2, 2024), report and recommendation adopted, No. 1:23-CV-01697-JLT-SAB, 2026 WL 77633 (E.D. Cal. Jan. 9, 2026). It "'clearly provides a personal cause of action for the victim of a hate crime' and is limited to those who have been the subject of violence or threats or those who were present and witnessed the actionable conduct." Id. at *41-42 (quoting Bay Area Rapid Transit District v. Superior Court, 38 Cal. App. 4th 141, 144 (1st Dist. 1995)). Since plaintiffs have not alleged that either Rodney or Ellen Wright have any personal cause of action for a Tom Bane Act violation, these plaintiffs may not recover under the Tom Bane Act. See id.

Plaintiff A.W., however, brings a survival action under the Tom Bane Act as decedent's successor-in-interest. (TAC ¶¶ 10, 11, 280.) Where a decedent held a viable claim for a Tom Bane Act violation, that claim survives decedent's death "and may be commenced by a successor in interest." Est. of Crawley v. Kings Cnty., No. 1:13-CV-02042-LJO, 2014 WL 2174848, at *11-12 (E.D. Cal. May 23, 2014), report and recommendation adopted, No. 1:13-CV-02042-LJO, 2014 WL 2801046 (E.D. Cal. June 19, 2014); Monzon v. City of Murrieta, No. 2:17-cv-01371 ODW (SKx), 2017 WL 3588740, at *4 (C.D. Cal. Aug. 18, 2017). Accordingly, as decedent's successor-in-interest, A.W. may bring the Tom Bane Act claim decedent held.

G. Intentional Infliction of Emotional Distress

"Under California law, '[a] cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the

intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.'" Ravel v. Hewlett-Packard Enterprise, Inc., 228 F. Supp. 3d 1086, 1099 (E.D. Cal. 2017) (citation omitted). "[A] defendant's 'reckless disregard of the probability that his conduct will cause a plaintiff severe emotional distress' may establish an IIED claim." O'Dell v. Mims, No. 1:20-cv-00378-NONE-JLT (PC), 2020 WL 3406196, at *6 (E.D. Cal. June 19, 2020) (quoting Christensen v. Superior Court, 54 Cal. 3d 868, 905 (1991)) (alterations omitted).

Defendants argue plaintiffs have not alleged conduct that is sufficiently outrageous. (Mot. at 23.) In doing so, defendants reassert their same position that decedent was adequately monitored while at defendants' facilities. (Mot. at 23-24.) The court has already rejected defendants' argument that decedent was adequately monitored. Moreover, when read in a light most favorable to plaintiffs, plaintiffs have alleged that decedent "was in such great pain that he began writhing in pain and crying as he remained lying on the floor of the cell while visible to jail staff." (TAC ¶¶ 101-05). In the face of decedent's "obvious medical needs" (TAC ¶ 153), Defendants nevertheless failed to summon medical help. Courts have held that a jury could find such deliberate indifference to a plaintiff's medical needs sufficiently extreme and outrageous to sustain a claim for intentional infliction of emotional distress.

Trujillo v. Cnty. of L.A., No. CV 14-5431 PSG (MRWx), 2019 WL 6622853, at *12 (C.D. Cal. Jan. 22, 2019) ("If a jury finds that [defendant] had purposefully delayed or refused medical care, that would be outrageous."); Loyd v. United States, No. EDCV 23-00381-CJC (SSCX), 2024 WL 3009011, at *6 (C.D. Cal. May 22, 2024). Accordingly, plaintiffs have adequately alleged a claim for intentional infliction of emotional distress.

H. Negligence

"The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a breach of such legal duty; (3) the breach was the proximate or legal cause of the resulting injury; and (4) actual loss or damage resulting from the breach of the duty of care." Megargee v. Wittman, 550 F. Supp. 2d 1190, 1209 (E.D. Cal. 2008) (applying California law).

The court has already found plaintiffs adequately alleged deliberate indifference against each defendant. Because negligence "requires a much lower level of culpability than deliberate indifference," plaintiffs necessarily have adequately alleged negligence against these defendants as well. See Cravotta v. Cnty. of Sacramento, No. 2:22-CV-00167-DJC-AC, 2025 WL 621544, at *14 (E.D. Cal. Feb. 26, 2025).

I. Wrongful Death

"California Code of Civil Procedure § 377.60 establishes a separate statutory cause of action in favor of specified heirs of a person who dies as a result of the 'wrongful act or neglect' of another.'" Deloney v. Cnty. of Fresno, No. 1:17-cv-01336-LJO-EPG, 2019 WL 1875588, at *9 (E.D. Cal. Apr. 26,

2019). "The elements of the cause of action for wrongful death . . . are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." Est. of F.R. v. Cnty. of Yuba, No. 2:23-CV-00846 WBS CKD, 2023 WL 6130049, at *10 (E.D. Cal. Sept. 19, 2023) (citations, quotations, and alterations omitted).

Defendants again argue that plaintiffs failed to allege any negligent or wrongful acts. (Mot. at 25-26.) But the court has already found plaintiffs adequately pleaded numerous wrongful acts against defendants, resulting in decedent's death. Plaintiffs have accordingly adequately pleaded a wrongful death claim. Deloney, 2019 WL 1875588, at *10 (E.D. Cal. Apr. 26, 2019) ("[F]or the same reasons the Court concluded that Plaintiff has alleged sufficient facts to a [sic] state a § 1983 claim for deliberate indifference . . . , it follows that Plaintiff has sufficiently pled the § 377.60 wrongful death claim.").

J. California Tort Claims Act

Defendants finally argue that plaintiffs' claim for damages against defendants is improper under the California Tort Claims Act. The California Tort Claims Act ("CTCA") requires that "'all claims for money or damages against local public entities' or public employees acting within the scope of that employee's public employment must first be presented to the employer." Tillery v. Lollis, No. 1:14-CV-02025-KJM, 2015 WL 4873111, at *5 (E.D. Cal. Aug. 13, 2015) (quoting Cal. Gov't Code §§ 905, 950.2). A plaintiff cannot commence a suit for damages

without first having submitted a claim to the employer. Cal. Gov't Code § 945.4.

The claim to the employer, however, need not be identical to the causes of action asserted in litigation. "A complaint's fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an 'entirely different set of facts.'" Tillery v. Lollis, No. 1:14-CV-02025-KJM, 2015 WL 4873111, at *7 (E.D. Cal. Aug. 13, 2015) (quoting Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 448 (2004)). "If the claim gives adequate information for the public entity to investigate, additional detail and elaboration in the complaint is permitted." Id. (citation omitted).

Defendants argue that plaintiffs failed to comply with the CTCA because plaintiffs' state-law causes of action based on overdose are "not fairly reflected in [plaintiffs'] government code claim." [8] (Mot. at 27; Reply at 13.) Specifically, defendants argue that the Government Code claim only alleged defendants "failed to respond to [decedent's] medical needs and failed to summon medical care," without also alleging "liability arising from decedent's ingestion of a fatal quantity of fentanyl" as plaintiffs' causes of action in this case do. (Mot.

---

[8] Defendants request that the court take judicial notice of a purported "Government Code Claim presented on behalf of plaintiffs ESTATE OF JEREMIAH WRIGHT, A.W., RODNEY WRIGHT, and ELLEN WRIGHT on or about June 25, 2024." (Docket No. 102-2 at 2.) As this claim was submitted by plaintiffs, and plaintiffs do not oppose the request, the court takes judicial notice of the fact that plaintiffs submitted this claim to the County of Stanislaus.

at 27.) According to defendants, this amounts to a "complete shift in allegations" from the Government Code claim. (Reply at 13.)

Even if defendants' representations of plaintiffs' Government Code claim are accurate, defendants are incorrect that plaintiffs' state-law causes of action are fatally different from the government code claim. "Only where there has been a 'complete shift of allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons than those described in the claim' have courts generally found the complaint barred." Tillery, 2015 WL 4873111, at *7 (quoting Stockett, 34 Cal. 4th at 448). Here, plaintiffs' alternate theory of wrongful conduct -- i.e., liability from decedent's fentanyl overdose -- does not present a new cause of action, nor does it center on acts or omissions committed at different times by different persons. It is "merely [an] additional theor[y] of liability under" plaintiffs' state-law causes of action. Greene v. California Dep't of Corr. & Rehab., No. 2:23-CV-00082 WBS DMC, 2024 WL 477353, at *3 (E.D. Cal. Feb. 7, 2024) (citing Blair v. Superior Court, 218 Cal. App. 3d 221, 226 (3d Dist. 1990); White v. Superior Court, 225 Cal. App. 3d 1505, 1511 (1st Dist. 1990)). Moreover, it remains reasonable to expect that the government claim would have fulfilled the purpose of the statute -- i.e., to lead the county to "investigate the chain of events leading to" decedent's death -- even if the government claim did not identify a fentanyl overdose as a theory of liability. Id. The CTCA thus

does not bar plaintiffs' request for damages for defendants' state-law violations.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Docket No. 102) be, and the same hereby is, GRANTED as to Javier Gomez, Gurwinder Singh, and Christopher Gallo with respect to Count II (Americans with Disabilities Act) and Count III (Rehabilitation Act); GRANTED as to Javier Gomez, Gurwinder Singh, and Christopher Gallo with respect to Rodney Wright's and Ellen Wright's claims under Count VIII (Tom Bane Civil Rights Act); and DENIED in all other respects.

Plaintiffs have twenty-one (21) days from the date of this Order to file an amended complaint for the limited purpose of curing the above-described deficiencies in Counts II, III, and VIII of the Third Amended Complaint, if they can do so consistent with this Order.

Dated: September 4, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE