UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ESTATE OF JEREMIAH WRIGHT, A.W., RODNEY WRIGHT, and ELLEN WRIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF STANISLAUS, STANISLAUS COUNTY SHERIFF'S DEPARTMENT, JEFF DIRSKE, COLTON DUTEY, VICTOR SANTOYO, GURWINDER SINGH, JAVIER GOMEZ, CHRISTOPHER GALLO, CALIFORNIA FORENSIC MEDICAL GROUP, INC., WELLPATH LLC, WELLPATH MANAGEMENT, INC., SUNNY BASSI, IRENE GARRAD, PHAJIKARN TSE, HARPREET BOPARAI-SEKHON, KATHLEEN GARCIA, and JOE CAPORGNO,<br><br>Defendants. | No. 2:24-cv-02505 WBS AC<br><br><u>MEMORANDUM AND ORDER RE: DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT</u> |

----oo0oo----

This case centers on the detention and death of decedent Jeremiah Wright, who died at Stanislaus County Sheriff's Detention Center on May 27, 2024. Plaintiffs assert 11 claims in their third amended complaint ("TAC") based on the events leading

up to decedent's death. (TAC (Docket No. 100) ¶¶ 222-305.)

Plaintiff A.W., decedent's biological child, brings this action on behalf of himself in his individual capacity, on behalf of the Estate of Jeremiah Wright as the estate's real party in interest, and on behalf of decedent as decedent's successor-in-interest. (TAC ¶¶ 10, 11.) Plaintiffs Rodney Wright and Ellen Wright, decedent's biological father and mother of decedent, respectively, bring this action on their own behalf in their individual capacities. (TAC ¶¶ 12, 13.)

Defendants California Forensic Medical Group, Inc., Wellpath LLC, Wellpath Management, Inc., and several of their employees[1] move to dismiss the TAC as against them under Rule 12(b)(1) for lack of subject matter jurisdiction[2] and Rule 12(b)(6) for failure to state a claim. (Mot. (Docket No. 107).) The court previously granted these defendants' motion to dismiss plaintiffs' second amended complaint since the complaint was an "example of textbook shotgun pleading." (Docket No. 96 at 2.) Plaintiffs' TAC is, if anything, an even worse example of shotgun pleading than the second amended complaint. Nevertheless, given the stage of litigation, and to avoid potentially inconsistent rulings between the moving defendants and the other defendants in this case, the court finds it more appropriate to allow defendants to seek clarity on the claims against them through discovery rather than the filing of yet another amended

[1] These employees consist of Joe Caporgno, Sunny Bassi, Irene Garrad, Phajikarn Tse, Harpreet Boparai-Sekhon, and Kathleen Garcia.

[2] As detailed below, defendants' arguments under Rule 12(b)(1) are more appropriately addressed under Rule 12(b)(6).

complaint.

## I. Relevant Facts as Alleged

### A. Decedent's Detention and Death

Decedent suffered from "substance abuse disorders and withdrawal." (TAC ¶ 59.) On May 23, 2024, a California Highway Patrol officer reported arresting decedent for driving under the influence. (TAC ¶¶ 62-65.) Shortly after being transported to the Stanislaus County Sheriff's Detention Center, a county deputy found a small plastic bag containing approximately 15 Oxycodone pills in decedent's wallet. (TAC ¶ 71.) Decedent was then placed on Clinical Institute Withdrawal Assessment for Alcohol (CIWA-Ar) and placed into a cell. (TAC ¶¶ 72-74.)

While detained, decedent exhibited "obvious . . . symptoms of withdrawal and/or overdose." (TAC ¶ 153.) His symptoms during detention included collapsing to the ground, "writhing in pain and crying," unresponsiveness, unconsciousness, and distress. (See, e.g., TAC ¶¶ 75, 101-06, 109, 113, 153-54, 177, 184.) Numerous medical personnel who were employees of California Forensic Medical Group, Inc., Wellpath LLC, and/or Wellpath Management, Inc. observed decedent in these conditions. (TAC ¶¶ 26-31, 111, 125-26, 137, 155-58, 163-65, 171-72.)

Decedent ultimately died on May 27, 2024 at 1:20 AM. (TAC ¶ 192.) The Stanislaus County Sheriff's Department Coroner's Division reported decedent's cause of death as "Acute Fentanyl Toxicity." (TAC ¶ 194.)

### B. Wellpath Bankruptcy Proceedings

On November 11, 2024, Wellpath Holdings, Inc. filed for Chapter 11 bankruptcy. (Discharge Plan (Docket No. 107-2 (Ex.

A)[3]) at 10,[4] 21.) On May 1, 2025, the bankruptcy court issued its order confirming the reorganization of Wellpath Holdings, Inc. "and certain of its debtor affiliates" (the "Discharge Plan"). (Id. at 5 & n.1.) The Discharge Plan has an "Effective Date" of May 9, 2025. (Id. at 73–74; Docket No. 107-2 (Ex. B)[5] at 154.)

Under the Discharge Plan, "all Claims and Causes of Action of any nature whatsoever against the Debtors" -- including defendants Wellpath LLC and Wellpath Management, Inc. (Discharge Plan at 5 n.1)[6] -- "are discharged" according to Article IX.A.

---

[3] Defendants request that the court take judicial notice of this document. (Docket No. 107-2.) Their request is unopposed, and they have provided sufficient information to establish that the document consists of the Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis from In re: Wellpath Holdings, Inc., et al, Case No. 24-90533, Docket No. 2596 (Bankr. S.D. Tex. May 1, 2025). The court accordingly "must" take judicial notice of the existence of this order from the bankruptcy proceeding to the extent it is necessary to this court's ruling on defendants' motion. Fed. R. Evid. 201(c)(2); Sunkett v. Boerum, No. 1:21-CV-01137-HBK (PC), 2024 WL 4369900, at *2 (E.D. Cal. Sept. 30, 2024).

[4] All page numbers in docket citations are to the page number in this court's ECF header.

[5] Defendants request that the court take judicial notice of this document. (Docket No. 107-2.) Their request is unopposed, and they have provided sufficient information to establish that the document consists of the General Form of Order Regarding Lift Stay Motions from In re: Wellpath Holdings, Inc., et al., Case No. 24-90533, Docket No. 2907 (Bankr. S.D. Tex. June 4, 2025). The court accordingly "must" take judicial notice of the existence of, and the provisions in, this order from the bankruptcy proceeding to the extent they are necessary to this court's ruling on defendants' motion. Fed. R. Evid. 201(c)(2); Sunkett, 2024 WL 4369900, at *2.

[6] The bankruptcy court's order provides that the

(Id. at 155.) Article IX.A. of the Discharge Plan provides:

> Pursuant to, and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code . . . , the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, . . . including demands, liabilities, and Causes of Action that arose before the Effective Date . . . .

(Id. at 129.) The Discharge Plan further enjoins "all Entities[7] who have held, hold, or may hold [discharged] claims or interests" from "commencing or continuing in any manner any . . . proceeding of any kind . . . with respect to any such claims or interest." (Id. at 138.)

## II. Legal Standard

Under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

---

"complete list of Debtors" subject to the Discharge Plan is available at https://dm.epiq11.com/Wellpath. (Discharge Plan at 5 n.1.) This list includes Wellpath, LLC and Wellpath Management, Inc.

[7] "'Entity' has the meaning set forth in section 101(15) of the Bankruptcy Code" (Discharge Plan at 74), i.e., "person, estate, trust, governmental unit, and United States trustee," 11 U.S.C. § 101(15).

the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Reviewing a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense," Iqbal, 556 U.S. at 679, and to "draw all reasonable inferences in favor of the nonmoving party," Boquist v. Courtney, 32 F.4th 764, 773 (9th Cir. 2022) (citations and quotations omitted).

Stating a claim "requires more than labels and conclusions, and a formulaic recitation of the elements." Twombly, 550 U.S. at 555. "Ultimately, dismissal is proper under Rule 12(b)(6) if it appears beyond doubt that the non-movant can prove no set of facts to support its claims." Boquist, 32 F.4th at 773-74 (citations, quotations, and alterations omitted).

## III. Discussion

### A. Bankruptcy

Defendants argue that plaintiffs cannot bring their claims against either Wellpath LLC or Wellpath Management, Inc. because those claims were discharged under the Discharge Plan. Defendants' argument requires resolving three distinct issues: (1) whether defendants properly bring their argument under Rule 12(b)(1) for lack of subject matter jurisdiction; (2) whether claims against a debtor must have arisen prior to a debtor's petition for bankruptcy in order to be discharged, or whether they only must have arisen prior to the confirmation of the discharge plan; and (3) whether plaintiffs' claims against Wellpath LLC and Wellpath Management, Inc. were discharged under the Discharge Plan under the Ninth Circuit's "fair contemplation" test. The court addresses each issue in turn.

1. Subject Matter Jurisdiction

Defendants style their dismissal arguments under Discharge Plan as a motion to dismiss for "lack of subject-matter jurisdiction" under Rule 12(b)(1). (Mot. at 4.) According to defendants, because "the Bankruptcy Court has subject matter jurisdiction over debtor entities involved in pre-petition claims," this court lacks subject-matter jurisdiction over plaintiffs' supposedly pre-petition claims. (Id. at 4, 10; Reply (Docket No. 112) at 2-3.)

Defendants are incorrect that the Discharge Plan's supposed barring of plaintiffs' claims dissolves this court's subject matter jurisdiction. "District courts have 'original and exclusive jurisdiction of all cases under title 11.'" In re Gruntz, 202 F.3d 1074, 1080 (9th Cir. 2000) (quoting 28 U.S.C. § 1334(a)). While Congress authorized district courts to refer these matters to bankruptcy courts, 28 U.S.C. § 157(a), (b), Congress did not provide that district courts lose subject matter jurisdiction over these matters once they are referred to a bankruptcy court, see Stern v. Marshall, 564 U.S. 462, 479 (2011) (courts are "not inclined to interpret statutes as creating a jurisdictional bar when they are not framed as such"); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 516 (2006) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."). Nor did the bankruptcy court's claim to "exclusive jurisdiction over all matters arising out of, or relating to, the Chapter 11 Cases and the Plan" (Discharge Plan at 144) strip this court of subject matter

jurisdiction over the same, see Kontrick v. Ryan, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction.").

Defendants' argument that the Discharge Plan bars plaintiffs' claims is more appropriately considered as a failure-to-state-a-claim defense under Rule 12(b)(6). Accord. O'Loghlin v. Cnty. of Orange, 229 F.3d 871, 874–77 (9th Cir. 2000) (reviewing dismissal of complaint based on pre-discharge causes of action under Rule 12(b)(6)). The court will proceed accordingly.

2. Pre-Petition Versus Pre-Discharge

The bankruptcy controversy centers on whether plaintiffs' claims arose early enough to be discharged under the Discharge Plan. To resolve this issue, the court must first address an inconsistency regarding whether claims against debtors must have arisen prior to a debtor's petition for bankruptcy, or whether they only need to have arisen before the discharge plan was confirmed. "Although [11 U.S.C.] § 1141(d)(1) provides that a Chapter 11 debtor is generally discharged from any pre-confirmation debts, [the Ninth Circuit] ha[s] sometimes referred to pre-petition claims in discussing whether claims discharged in a Chapter 11 bankruptcy have subsequently been revived." Camelback Constr. v. Castellino Villas, A.K.F. LLC, 836 F.3d 1028, 1033 n.3 (9th Cir. 2016). While the Ninth Circuit has acknowledged this inconsistency, it has yet to resolve it. See id.

This court holds that claims subject to a discharge in

bankruptcy include those that arose post-petition, so long as they arose pre-confirmation. First, this holding comports with the statutory language. See 11 U.S.C. § 1141(d)(1)("[T]he confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation . . . .") (emphases added). Second, this holding aligns with the Bankruptcy Code's "policy" of giving debtors a "fresh start." See In re Riso, 978 F.2d 1151, 1154 (9th Cir. 1992) ("In order to effectuate the fresh start policy, exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor."); Goudelock v. Sixty-01 Ass'n of Apartment Owners, 895 F.3d 633, 637 (9th Cir. 2018) ("Bankruptcy proceedings are intended to grant debtors a fresh start . . . and, as a result, the Bankruptcy Code is to be construed liberally in favor of debtors . . . .") (citations and quotation omitted). Third, every circuit court to address the issue has agreed that post-petition but pre-confirmation claims are subject to discharge. See Wright v. Owens Corning, 679 F.3d 101, 107 (3d Cir. 2012); Epstein v. Off. Comm. of Unsecured Creditors of Est. of Piper Aircraft Corp., 58 F.3d 1573, 1577 & n.5 (11th Cir. 1995); In re Christopher, 28 F.3d 512, 515 (5th Cir. 1994).

Accordingly, the dispositive issue is whether plaintiffs' claims against defendants arose before or after the confirmation of the Discharge Plan, i.e., May 9, 2025.

3. "Fair Contemplation" Test

The confirmation of a Chapter 11 reorganization plan generally discharges the debtor from any pre-discharge debts,

including any "liability on a claim" that arose pre-discharge. See 11 U.S.C. § 1141(d)(1); 101(12). "A claim is broadly defined under the Bankruptcy Code. It includes a right to payment . . . 'whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.'" In re SNTL Corp., 571 F.3d 826, 838 (9th Cir. 2009) (quoting 11 U.S.C. § 101(5)) (emphasis omitted). "The Code utilizes this 'broadest possible definition' of claim to ensure that 'all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case.'" Id. (quoting In re Jensen, 995 F.2d 925, 929-30 (9th Cir.1993)) (emphasis omitted).

Whether a claim against a debtor arose pre-discharge is a question of federal law.[8] See Goudelock v. Sixty-01 Ass'n of Apartment Owners, 895 F.3d 633, 638 (9th Cir. 2018). In the Ninth Circuit, "'a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law.'" Id. (quoting In re SNTL Corp., 571 F.3d 826, 839 (9th Cir. 2009)). According to one court, the

> "fair contemplation" test is a totality of the circumstances test, whereby the court should consider: (1) when the conduct underlying the creditor's claim

[8] Plaintiffs' assertion that state law governs this determination (Docket No. 111 at 2) is incorrect. The cases plaintiffs cite in support of their assertion were assessing whether a debtor's cause of action had passed to the bankruptcy estate, not whether a claim for liability against a debtor was discharged as part of the discharge plan.

> occurred; (2) the creditor's knowledge of that conduct; (3) whether the creditor had an opportunity to learn of the conduct underlying the claim and whether it undertook an investigation to determine whether it had a claim; and (4) whether there was any prepetition relationship between the parties.

In re Washington Grp. Int'l, Inc., No. ADV 05-05022-GWZ, 2013 WL 3963462, at *10 (B.A.P. 9th Cir. Aug. 2, 2013).

At oral argument on the motion, plaintiffs' counsel vigorously argued that plaintiffs could not have fairly or reasonably contemplated the existence of their claim prior to the effective date of the Discharge Plan. This argument is, however, belied by the plain language of plaintiffs' pleadings in this case. There is no dispute that the alleged conduct on which plaintiffs base their claims arose in May of 2024, a year prior to the Discharge Plan's effective date. (See, e.g., TAC ¶¶ 1-2.) And plaintiffs' pleadings make it clear that plaintiffs were aware of the existence of that conduct at least as early as eight month before the effective date of th Discharge Plan, because it was on September 16, 2024, that plaintiffs filed their original complaint alleging that "agents or employees of . . . Wellpath LLC" engaged in conduct including reckless indifference and negligence leading to decedent ingesting a fatal amount of fentanyl. (Docket No. 1 ¶¶ 15, 93-117, 122-53.).[9]

---

[9] Plaintiffs, in their original complaint, alleged "DOE 1 to 20 are and/or were agents or employees of Defendants COUNTY OF STANISLAUS, STANISLAUS COUNTY SHERIFF'S DEPARTENT, and/or California Forensic Medical Group, Inc. dba Wellpath LLC" and were "acting within the scope of agency or employment and under color of state law." (Docket No. 1 ¶ 15 (emphasis added).)

Further, in the parties' joint status report of December 27, 2024, defendants informed plaintiffs that they "anticipate[d] the possible filing of a cross complaint against . . . Wellpath LLC."[10] (Docket No. 9 at 3; see also Docket No. 14 at 10 (plaintiffs' conceding on February 28, 2025, that "Defendants have suggested that other third-parties," including Wellpath LLC, "could be liable for decedent's death"). Plaintiffs thus could have fairly contemplated their claims against Wellpath LLC prior to the confirmation of the Discharge Plan. Therefore, plaintiffs' claims against Wellpath LLC have been discharged under the Discharge Plan and must accordingly be dismissed.

Defendants have not demonstrated the same for Wellpath Management, Inc., however. Although the events alleged in the TAC undisputedly occurred prior to confirmation of the Discharge Plan, defendants have not shown that plaintiffs had reason to

---

Elsewhere in that same complaint, plaintiffs further alleged these "DOE 1 to 20" defendants "were responsible for monitoring and supervising [decedent]," "knew or should have known" decedent possessed and ingested "a fatal quantity of fentanyl," and "failed to detect and/or prevent [decedent] from ingesting a fatal quantity of fentanyl." (Docket No. 1 ¶¶ 63-79.) The complaint went on to allege that these defendants "exhibited deliberate indifference to [decedent's] safety and serious medical needs." (Id. at ¶ 78; see also id. at ¶ 97 (alleging the "DOE 1 to 20" defendants "were motivated by evil motive or intent, involved reckless or callous indifference to constitutional rights, or were wantonly oppressively done [sic]".) Plaintiffs persist in these same allegations against agents and/or employees of Wellpath LLC in the TAC.

[10] A court may rely on the court filings of the non-moving party when deciding a motion to dismiss. See Barboza v. Mercedes-Benz USA, LLC, No. 1:22-CV-0845 AWI CDB, 2022 WL 17978408, at *2 (E.D. Cal. Dec. 28, 2022) (collecting cases).

attribute this conduct to Wellpath Management, Inc. Defendants have thus failed to show from the face of the pleadings that plaintiffs' claims against Wellpath Management, Inc. have been discharged.

B. Tom Bane Civil Rights Act

Defendants finally argue that plaintiffs failed to plead a claim under the Tom Bane Civil Rights Act, (the "Tom Bane Act"), Cal. Civ. Code § 52.1. The elements of a Tom Bane Act violation are: "(1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." Wilkins v. Heslop, No. 2:20-CV-01622 DJC SCR P, 2025 WL 1192733, at *9 (E.D. Cal. Apr. 24, 2025) (citations and quotations omitted). The Tom Bane Act "'provides a personal cause of action for the victim of a hate crime' and is limited to those who have been the subject of violence or threats or those who were present and witnessed the actionable conduct." Est. of Valentine v. Cnty. of Merced, No. 1:23-CV-01697-JLT-SAB, 2024 WL 4374303, at *41-42 (E.D. Cal. Oct. 2, 2024), report and recommendation adopted, No. 1:23-CV-01697-JLT-SAB, 2026 WL 77633 (E.D. Cal. Jan. 9, 2026) (quoting Bay Area Rapid Transit District v. Superior Court, 38 Cal. App. 4th 141, 144 (1st Dist. 1995)).

Defendants argue that plaintiffs have not alleged that they were personally subject to an interference of a constitutional right. (Mot. at 15.) Instead, plaintiffs only allege defendants intentionally violated decedent's constitutional right to familial association. (Id.)

The other defendants[11] in this case asserted the same argument in their motion to dismiss the TAC. (Docket No. 102-1 at 22.) In ruling on their motion, this court held that Rodney Wright and Ellen Wright could not recover under the Tom Bane Act because plaintiffs have not alleged that either Rodney or Ellen Wright have any personal cause of action for a Tom Bane Act violation. (Docket No. 123 at 19-20 (citing Valentine, 2024 WL 4374303, at *41-42).) The court further held, however, that A.W. could bring a survival action under the Tom Bane Act as decedent's successor-in-interest. (Id. at 20 (citing Est. of Crawley v. Kings Cnty., No. 1:13-CV-02042-LJO, 2014 WL 2174848, at *11-12 (E.D. Cal. May 23, 2014), report and recommendation adopted, No. 1:13-CV-02042-LJO, 2014 WL 2801046 (E.D. Cal. June 19, 2014); Monzon v. City of Murrieta, No. 2:17-cv-01371 ODW (SKx), 2017 WL 3588740, at *4 (C.D. Cal. Aug. 18, 2017)).) These legal rulings are accordingly the law of the case and apply to the defendants here as well. Fikre v. Fed. Bureau of Investigation, 35 F.4th 762, 770 (9th Cir. 2022) ("Under the law of the case doctrine, ordinarily, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (citations and quotations omitted).

IT IS THEREFORE ORDERED that defendants' motion to dismiss the TAC (Docket No. 107) be, and the same hereby is, GRANTED as to Wellpath LLC; GRANTED with respect to Rodney

---

[11] These defendants consist of County of Stanislaus, Stanislaus County Sheriff's Department, Jeff Dirske, Colton Dutey, Victor Santoyo, Gurwinder Singh, Javier Gomez, and Christopher Gallo.

Wright's and Ellen Wright's claims under Count VIII (Tom Bane Civil Rights Act); and DENIED in all other respects.

Plaintiffs have twenty-one (21) days from the date of this Order to file an amended complaint for the limited purpose of curing the above-described deficiencies, if they can do so consistent with this Order.

Dated: September 15, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE